UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN FINLEY,

                    Petitioner,

       - against -

HAROLD D. GRAHAM,

                    Respondent.

12 Civ. 9055(KMK)(PED)

**REPORT AND
RECOMMENDATION**

TO:   **THE HONORABLE KENNETH M. KARAS,
UNITED STATES DISTRICT JUDGE**

## I. INTRODUCTION

Steven Finley ("Petitioner"), proceeding *pro se*, seeks a writ of *habeas corpus* pursuant

to 28 U.S.C. § 2254. Petitioner was convicted in 2005 in Westchester County (DiBella, J.) of

multiple counts of attempted escape, conspiracy, and promoting prison contraband in connection

with three escape attempts at Sing Sing Correctional Facility in Ossining, New York. This

petition comes before me pursuant to an Order of Reference dated March 4, 2013. (Dkt. 12.)

For the reasons set forth below, I respectfully recommend that the petition be **DENIED**.

## II. BACKGROUND[1]

This case involves a trio of elaborate escape attempts from Sing Sing in April and May

2003. Petitioner and his co-defendant, inmate Nicholas Zimmerman ("Zimmerman")[2],

---

[1] Unless otherwise indicated, the information within this section is taken from a review of Respondent's Affidavit in Opposition to Petition for Writ of *Habeas Corpus* (Dkt. 15), Respondent's Memorandum of Law (Dkt. 16), and the record of Petitioner's underlying trial.

[2] On May 7, 2013, I recommended that Zimmerman's *habeas* petition, challenging convictions arising from the same trial, be denied. See Zimmerman v. Conway, No. 10 Civ. 1393(ER)(PED) (Dkt. 28)(Report and Recommendation).

devised a scheme, using information obtained from a corrupt corrections officer, whereby accomplices snuck into the prison disguised as uniformed corrections officers. The accomplices attempted to smuggle weapons and additional corrections uniforms into the facility to facilitate the escapes of Petitioner and Zimmerman. Each attempt was aborted before the inmates could disguise themselves and escape. After a state police investigation, six accomplices confessed to roles in the scheme and ultimately testified against Petitioner and Zimmerman at trial.

A.    **The Crimes, Felony Complaint, and Indictment**

On or about February 3, 2004, a felony complaint was filed in the Ossining Village Court that charged Petitioner and Zimmerman with attempted escape in the first degree.[3] The complaint was superseded by an indictment filed on August 12, 2004. The indictment charged Petitioner with the following crimes: one count of bribery in the third degree;[4] three counts of attempted escape in the first degree; five counts of promoting prison contraband in the first degree;[5] two counts of attempted criminal possession of a weapon in the second degree;[6] one

---

[3] "A person is guilty of escape in the first degree when . . . [h]aving been charged or convicted of a felony, he escapes from a detention facility . . . . Escape in the first degree is a class D felony." N.Y. Penal Law § 205.15(1). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." Id. § 110.00.

[4]

A person is guilty of bribery in the third degree when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced. Bribery in the third degree is a class D felony.

N.Y. Penal Law § 200.00.

[5] "A person is guilty of promoting prison contraband in the first degree when . . . [b]eing a person confined in a detention facility, he knowingly and unlawfully makes, obtains or possesses any dangerous contraband. Promoting prison contraband in the first degree is a class

count of conspiracy in the fourth degree;[7] and one count of promoting prison contraband in the second degree.[8]

**B.      Pretrial Proceedings and Counsel's Opening Statement**

Petitioner moved pretrial to sever his trial from Zimmerman.  (See Pretrial T: 319–20 (Dkt. 17).)  The request was later withdrawn.  (Id. at 425.)

Following jury selection, Petitioner and Zimmerman's joint trial began on March 16, 2005.  In his opening statement, Petitioner's attorney stated, among other things, that Zimmerman was "a scam artist" and "a fraud," had a "Svengali like affect on people," "exert[ed] . . . control" over the actions of the other accomplices, and was fully responsible for "the plan" to escape.  He argued that Petitioner had no knowledge of Zimmerman's plans.  (T: 617, 620 (Dkt. 18).)  Zimmerman's attorney objected to the remarks but did not seek relief from the court until

---

D felony."  N.Y. Penal Law § 205.25(2).

[6] A person is guilty of criminal possession of a weapon in the second degree when, with intent to use the same unlawfully against another . . . [h]e possesses a loaded firearm . . . .  Criminal possession of a weapon in the second degree is a class C felony.  N.Y. Penal Law § 265.03(2), amended by 2005 N.Y. Sess. Laws ch. 764, § 3 (2005).  "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."  Id. § 110.00.

[7]

A person is guilty of conspiracy in the fourth degree when, with intent that conduct constituting . . . a class B or class C felony be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct . . . .  Conspiracy in the fourth degree is a class E felony.

N.Y. Penal Law § 105.10(1).

[8] A person is guilty of promoting prison contraband in the second degree when . . . [b]eing a person confined in a detention facility, he knowingly and unlawfully makes, obtains or possesses any contraband.  Promoting prison contraband in the second degree is a class A misdemeanor.  N.Y. Penal Law § 205.20(2).

the following day when he orally moved to sever the trials based on the opening argument of Petitioner's counsel. The motion was denied and the following day, counsel for Zimmerman, as well as Zimmerman proceeding *pro se*, submitted written motions for severance. The court denied the requests on March 22, 2005.

**C.**   **The Evidence Presented at Trial**[9]

On December 6, 2001, Petitioner was convicted in Nassau County of attempted murder in the second degree, criminal possession of a weapon in the second degree, criminal use of a firearm in the first degree, and assault in the first degree. See People v. Finley, 810 N.Y.S.2d 905 (App. Div. 2006). He was sentenced to a term of twenty years imprisonment plus five years of post release supervision, and arrived at Sing Sing to serve his sentence on January 17, 2002. On April 16, 2002, Zimmerman arrived at Sing Sing.[10] Between November 2002 and May 2003, Petitioner conspired with several individuals in a plot that would enable Petitioner and Zimmerman to escape the prison. The accomplices, who were friends and acquaintances of Zimmerman, included Barry Alexander ("Alexander"), Tony Dubose ("Dubose"), Jatanya Belnavis ("Belnavis"), Latrina Boyd ("Boyd"), and Tamara Johnson ("Johnson"), as well as Sing Sing Corrections Officer Quangtrice Wilson ("Wilson").

**1.**   **The Prosecution's Case**

Wilson, the corrections officer, testified that she gave Belnavis and Johnson information about the layout of the facility, prison operations, corrections officer uniforms, and staff badges

---

[9] Unless otherwise specifically indicated, the information described in this section is taken from a review of the pretrial (Dkt. 17) and trial (Dkt. 18) transcripts.

[10] Zimmerman had been convicted in Queens County of criminal possession of a weapon in the second and third degrees, and menacing in the second degree, and was sentenced to a term of fifteen years imprisonment.

in exchange for bribes.  Wilson permitted the co-conspirators to photograph her identification card in order to create false ID's.  Wilson also admitted that she smuggled contraband food, toiletries, and cell phones into the prison for Zimmerman.

Tiana Santiago ("Santiago"), a prison employee who supervised Petitioner's prison jobs, testified that in the Spring of 2003, Petitioner asked her for information about the streets that surrounded the prison as well as Metro-North train schedules.  She did not give him the information. She also testified that Petitioner told her he intended to be out of prison soon.

Belnavis testified about the three escape plans and described the roles of the various co-conspirators.  She admitted paying co-conspirators (including Wilson), purchasing supplies, coordinating information, sewing phony uniforms from materials obtained at a law enforcement supply store, purchasing a motorcycle which Petitioner and Zimmerman could use to flee, and helping Boyd and Johnson create false badges and ID cards.  Belnavis and Johnson also testified that they obtained a 9mm and a .38 caliber handgun from an individual known as "Smooth" for use in the escape.

Boyd testified, among other things, that she purchased a cell phone for Zimmerman and helped procure the false badges at Zimmerman's request.  She also testified that Zimmerman pointed Petitioner out to her while she visited Zimmerman at Sing Sing and informed her that both he and Petitioner would be escaping together.  Finally, the accomplices testified about numerous phone calls between Zimmerman and the accomplices regarding the planned escapes, including phone calls in which Petitioner participated.

Belnavis, Johnson, Alexander, and Dubose–each of whom participated in at least one of the three escape attempts at Sing Sing–described the events as follows.

i.      **The April 24, 2003 Attempt**

5

On April 24, 2003, Belnavis and an individual known as "Rock" entered Sing Sing disguised as corrections officers.  They carried a duffle bag containing loaded 9 mm and .38 caliber handguns, additional uniforms, pepper spray, ID cards, and badges.  Meanwhile, Alexander and Johnson went to Sing Sing that day to visit Petitioner and Zimmerman.  Belnavis coordinated the visit and had Alexander sign in as Petitioner's visitor.  This was the first time Alexander and Petitioner met.  During the visit, Alexander, Johnson, Petitioner, and Zimmerman walked to the back of the visitor's room to talk.

A corrections officer at the front gate noticed a problem with the counterfeit ID cards and sent Belnavis and Rock to a Deputy's office for further investigation.  On the way to the office, Belnavis feigned an asthma attack and the two left the prison, aborting the escape.

### ii.    The May 6, 2003 Attempt

Belnavis acquired a motorcycle to assist with a second escape attempt.  Dubose agreed to ride the motorcycle to Sing Sing, dress as a corrections officer, and enter the prison with extra uniforms, badges, identification cards, pepper spray, and a loaded weapon, in exchange for $15,000.  On May 6, 2003, Dubose rode the motorcycle to Ossining, where he met up with Belnavis, Johnson, and Alexander.  Belnavis gave Dubose a duffle bag containing uniforms, ID cards, badges, pepper spray, and the two loaded handguns.[11]  Dubose changed into the uniform and strapped a weapon to his person.  However, Dubose did not attempt to enter the facility because he was too late to blend in with corrections officers arriving for a shift change.  The plan was again aborted and Alexander and Dubose rode the motorcycle to a residential area and left it chained to a post overnight.

_____

[11] Belnavis testified that Dubose carried two weapons into Sing Sing.  Dubose testified that he carried only the 9 mm.

### iii.    <u>The May 7, 2003 Attempt</u>

The next day, Dubose, Alexander, Belnavis, and Johnson returned to Ossining.  When Dubose and Alexander arrived at the spot where they had left the motorcycle, they encountered a police officer who was waiting for a tow truck.  The officer, Dubose, and Alexander each testified that the conspirators approached the officer, provided their real identification cards, and told him that the motorcycle had been chained up overnight because it had broken down.  The officer recorded the identification information but did not impound the bike.

Dubose then changed into the corrections officer uniform and rode the motorcycle to Sing Sing.  Alexander, Belnavis, and Johnson waited in cars in the prison parking lot.  Additional conspirators arrived to visit Petitioner and Zimmerman.  Dubose entered the prison with a group of genuine officers during a shift change.  He carried the duffle bag containing contraband, and at least one loaded weapon.[12]  Officers at the gate noticed a problem with Dubose's badge and sent him to see a Deputy.  Dubose claimed he was transferred from Fishkill Correctional Facility, then fled the prison on the pretext of using the restroom, leaving behind the duffle bag and its contents, the false identification card, and the false badge.  Belnavis, Johnson, and Dubose drove away by car while Alexander rode the motorcycle out of Ossining.  Dubose testified that Belnavis paid him $2,500 for his efforts.

When the corrections staff realized that the identification items were fake and that Dubose had exited the facility, they opened the duffle bag and discovered the extra uniforms, badges, and pepper spray.  Local police were alerted.  The police officer who had earlier spoken to Dubose and Alexander about the motorcycle testified that he recognized the photograph used

---

[12] Again, Belnavis testified that Dubose carried two firearms, while Dubose testified that he carried only one.

on Dubose's fake ID.  He gave the state police the names and contact information that Dubose

and Alexander had provided.  Dubose, Alexander, Boyd, Belnavis, Johnson, and Wilson were

each eventually arrested and each conspirator cooperated with the investigation led by New York

State criminal investigator Darin Daughtry ("Daughtry").

      The testimony of these accomplices was corroborated by, *inter alia*, log books and

inmate frisk logs showing that Petitioner and Zimmerman each arrived at the Sing Sing visitor's

room at approximately the same time on April 24, May 6, and May 7, 2003, at times which

dovetailed with the accomplices testimony concerning the three escape plans; phone records

showing calls which corresponded with testimony concerning calls to and from a cell phone that

Wilson smuggled into the prison for use by Petitioner and Zimmerman; receipts from a law

enforcement supply store; the Ossining police officer's notebook containing Dubose and

Alexander's names and contact information; a taped telephone conversation during which

Belnavis and Wilson discuss a law enforcement supply store and Zimmerman's voice can be

heard participating via three-way conference; the duffle bag which was abandoned inside Sing

Sing after Dubose aborted the May 7, 2003 attempt; the testimony of Santiago, a non-

accomplice, regarding Petitioner's queries and other statements; and ammunition recovered from

Belnavis's vehicle after her arrest.

    **2.**    ***Petitioner's Case***

      Petitioner did not call witnesses, present evidence, or testify.  His defense focused on

discrediting the accomplices by emphasizing their favorable cooperation deals with the

prosecution.  Petitioner's attorney denied that his client had any knowledge of the attempted

escapes and stressed that the accomplices were friends with Zimmerman–not Petitioner.

**D.**    **The Verdict, Motion to Set Aside the Verdict, and Sentence**

On April 8, 2005, the jury found Petitioner guilty of the following offenses: three counts of attempted escape in the first degree, one count of promoting prison contraband in the second degree, and one count of conspiracy in the fourth degree.[13]  The jury acquitted Petitioner of the remaining counts.[14]  Proceeding *pro se*, Petitioner moved to set aside the jury's verdict pursuant to Section 330.30 of the N.Y. Criminal Procedure Law on the following grounds:[15]

(1)     "the evidence before the jury was insufficient to support his conviction based on accessorial liability;"
(2)     ineffective assistance of counsel; and
(3)     Petitioner was denied his right to be present at side-bar conferences.

(See Sentencing T: 3–4 (Dkt. 20).[16])  The court denied Petitioner's motion and on June 7, 2005, sentenced him, as a second felony offender, to an aggregate term of 6 to 12 years imprisonment. The court ordered the sentence to run consecutive to the undischarged portion of the sentence Petitioner was serving at the time of the attempted escapes.

## E.     Direct Appeal

---

[13] The conspiracy that was alleged and which the jury convicted Petitioner of, was a conspiracy to commit the crime of criminal possession of a weapon in the second degree.  (T: 2339–45.)

[14] Zimmerman was found guilty of the following: one count of bribery in the third degree, three counts of attempted escape in the first degree, five counts of promoting prison contraband in the first degree, one count of promoting prison contraband in the second degree, and one count of conspiracy in the fourth degree.

[15]

At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon . . . [a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.

N.Y. Crim. Proc. Law § 330.30(1).

[16] A copy of this motion does not appear in the record provided by Respondent.

9

Through appellate counsel, Petitioner raised the following claims on direct appeal:

(1) the jury's guilty verdict on the conspiracy charge was legally inconsistent with and/or repugnant to its acquittal on the attempted criminal possession of a weapon charge, (see Br. for Appellant, at 7–8 (attached to Resp't's Mem. of Law ("Resp't's Mem."), at Ex. 1 (Dkt. 16));[17]

(2) there was insufficient evidence, including:

  (i) insufficient evidence to corroborate the accomplices' testimonies, (see id. at 8–36),

  (ii) insufficient evidence establishing accessorial liability, (see id. at 37–40),

  (iii) insufficient evidence establishing Petitioner's intent to escape or any overt act that permitted him to come dangerously close to effectuating an escape, (see id. at 40–48);

(3) the verdict was against the weight of the evidence, (see id. at 8–36, 36–40); and

(4) the trial court erred by failing to sever the trial, (see id. at 48–52).

The Second Department affirmed the conviction on February 9, 2010.  People v. Finley, 894 N.Y.S.2d 517 (App. Div. 2010).  Leave to appeal was denied by the New York State Court of Appeals on May 19, 2010.  People v. Finley, 14 N.Y.3d 887 (2010).  Proceeding pro se, Petitioner sought reconsideration of the denial of his leave application.  That request was denied on September 30, 2010.  People v. Finley, 15 N.Y.3d 851 (2010).  Petitioner did not seek a writ of certiorari from the United States Supreme Court.  (See Pet. Under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.") ¶ 9(h) (Dkt. 2).)

---

[17] Unless indicated otherwise, all exhibits cited herein are attached to Respondent's Memorandum (Dkt. 16).

**F.**     **The Motion to Vacate the Judgment of Conviction**

By *pro se* application dated November 15, 2010, Petitioner moved to vacate the judgment

of his conviction pursuant to Section 440.10 of the N.Y. Criminal Procedure Law[18] on the ground

that his trial counsel provided ineffective assistance because counsel:

(1)     failed to object to the court's jury instruction on the conspiracy offense–specifically, that its instruction that "a defendant 'may be convicted of conspiracy even though one or more or all of the other parties to the agreement are not guilty of conspiracy or criminal possession of a weapon in the second degree'"–was "prejudicial" because none of the accomplices were charged or convicted with a conspiracy offense, (Ex. 8, at 10);

(2)     failed to object to the repugnant/inconsistent verdict, whereby Petitioner was found guilty of conspiracy in the fourth degree for conspiring to possess a weapon, but was acquitted of the underlying attempted criminal possession of a weapon charge, (see id. at 11–13);

(3)     failed to challenge the sufficiency of the evidence presented at trial, including any corroboration evidence or evidence of accessorial liability, (see id. at 14–54); and

(4)     failed to request a missing witness or favorable inference charge with respect to the Sing Sing prison guard who manned the employee entrance/exit on April 24, 2003, (see id. at 54–57).

By decision and order dated April 1, 2011, Petitioner's motion was denied.  (Ex. 10.)

Petitioner sought leave to appeal, (Ex. 11), which the Second Department denied on September

8, 2011, (Ex. 13).

**G.**     **Application for Writ of *Error Coram Nobis***

By *pro se* application dated July 7, 2011 Petitioner sought a state writ of *error coram*

*nobis* on the grounds that appellate counsel was ineffective for:

(1)     raising futile claims on direct appeal (including the repugnancy claim, the insufficient evidence claim, and the severance claim) because the claims were not preserved for appellate review, (see Pet'r's *Error Coram Nobis* Mem. of Law, at 4–9 (Ex. 14)); and

_____

[18] "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment . . . ."  N.Y. Crim. Proc. Law § 440.10(1).

(2)    failing to raise meritorious claims on direct appeal, including:

    (a)    ineffective assistance of trial counsel for trial counsel's failure to object to and preserve the repugnancy, evidence sufficiency, and severance claims, (see id. at 10–40),

    (b)    ineffective assistance of trial counsel for trial counsel's questioning Daughtry about Petitioner's middle name, (see id. at 40–41), and

    (c)    ineffective assistance of trial counsel for failing to request a missing witness charge or an adverse witness charge for the corrections officer responsible for manning the employee entrance/exit on April 24, 2003, (see id. at 41–45).

By decision and order dated January 24, 2012, the Second Department denied the application. People v. Finley, 936 N.Y.S.2d 907 (2012). Petitioner sought leave to appeal, (Ex. 17), which the New York State Court of Appeals denied on April 18, 2012. People v. Finley, 18 N.Y.3d 994 (2012).

## H.    Petition for Federal Writ of *Habeas Corpus*

On December 11, 2012, the *Pro Se* Office of the Southern District of New York received Petitioner's unsigned application seeking federal *habeas* relief. (Dkt. 2.) By Order dated January 10, 2013, Petitioner was directed to submit an executed signature page of his petition. (Dkt. 4.) He complied. (See Dkts. 6, 7, 13.) Petitioner raises the following claims in his petition:

(1)    the jury's guilty verdict on the conspiracy charge is legally inconsistent with and/or repugnant to its acquittal on the attempted criminal possession of a weapon charge;

(2)    there was insufficient evidence, including:

    (i)    insufficient evidence to corroborate the accomplices' testimonies,

    (ii)    insufficient evidence establishing accessorial liability,

    (iii)    insufficient evidence establishing Petitioner's intent to escape or any overt act that permitted him to come dangerously close to effectuating an escape,

(3)    the verdict was against the weight of the evidence;

(4)    the trial court erred by failing to sever the trial;

(5)    ineffective assistance of trial counsel due to trial counsel's:

12

      (a)     failure to object to the sufficiency of the evidence presented at trial, including any corroboration evidence, improperly admitted evidence, and evidence of accessorial liability,

      (b)     failure to request a missing witness or favorable inference charge with respect to the Sing Sing prison guard who manned the employee entrance/exit on April 24, 2003,

      (c)     failure to object to the court's jury instructions regarding the conspiracy charge, and

      (d)     cross-examination of Daughtry on the subject of Petitioner's middle name ("Bruce"); and

(6)     ineffective assistance of appellate counsel:

      (a)     for counsel raising any of the claims that he raised on direct appeal because trial counsel failed to preserve those claims for appellate review and consequently all of those claims were futile, and

      (b)     for counsel's failure to raise meritorious claims on direct appeal, including the claims of:

            (i)     ineffective assistance of trial counsel due to trial counsel's failure to object to the insufficiency of the evidence, including any corroborations evidence, improperly admitted evidence, and evidence of accessorial liability,

            (ii)     ineffective assistance of trial counsel due to trial counsel's failure to request a missing witness or favorable inference charge with respect to the Sing Sing prison guard who manned the employee entrance/exit on April 24, 2003,

            (iii)     ineffective assistance of trial counsel due to trial counsel's failure to object to the court's jury instruction regarding the conspiracy charge, and

            (iv)     ineffective assistance of trial counsel due to trial counsel's cross-examination of Daughtry on the subject of Petitioner's middle name ("Bruce").[19]

## III. DISCUSSION

### A.    Applicable Law on *Habeas Corpus* Review

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

---

[19] The organization of the petition, which incorporates several attachments, is confusing. Accordingly, I have re-numbered Petitioner's claims.

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas*

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized

below.

1.      ***Timeliness Requirement***

A federal *habeas* petition is subject to AEDPA's strict, one-year statute of limitations.

See 28 U.S.C. § 2244(d).  The statute provides four different potential starting points for the

limitations period, and specifies that the latest of these shall apply.  See id. § 2244(d)(1).  Under

the statute, the limitation period is tolled only during the pendency of a properly filed application

for State post-conviction relief, or other collateral review, with respect to the judgment to be

challenged by the petition.  See id. § 2244(d)(2).  The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of–
>> (A) the date on which the judgment became final by the conclusion of direct
>> review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by
>> State action in violation of the Constitution or laws of the United States is
>> removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially
>> recognized by the Supreme Court, if the right has been newly recognized by
>> the Supreme Court and made retroactively applicable to cases on collateral
>> review; or
>> (D) the date on which the factual predicate of the claim or claims presented
>> could have been discovered through the exercise of due diligence.
> (d)(2) The time during which a properly filed application for State post-conviction
> or other collateral review with respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).[20]

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." Id. Finally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (the applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

### 2.   *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see § 2254(b)(1) ("[a]n

---

[20] Petitioner's application was timely filed.  §§ 2244(d)(1)(A), (d)(2).

application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim. Rose v. Lundy, 455 U.S. 509, 518–19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

17

### 3.     *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it.  Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law.  Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740).  A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question."  Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423–24 (1991)).

### 4.     *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims.  § 2254(d)(1)–(2).  This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review.  Williams v. Taylor, 529 U.S. 362, 402 (2000).  For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)–(2). The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). Where the state court "did not reach the merits" of the federal claim, however, "federal habeas review is not subject to the deferential standard that applies under AEDPA . . . . Instead, the claim is reviewed *de novo*." Cone v. Bell, 129 S. Ct. 1769, 1784 (2009); see § 2254(d).

Under the first prong of the AEDPA deferential standard, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

>Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court. . . . If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's

19

> precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus
> is a guard against extreme malfunctions in the state criminal justice systems, not a
> substitute for ordinary error correction through appeal. . . . As a condition for
> obtaining habeas corpus from a federal court, a state prisoner must show that the
> state court's ruling on the federal claim being presented in federal court was so
> lacking in justification that there was an error well understood and comprehended in
> existing law beyond any possibility of fairminded disagreement.

Harrington v. Richter, 131 S. Ct. 770, 786–87 (2011) (internal quotation marks and citations

omitted).

     Under the second prong of AEDPA, the factual findings of state courts are presumed to

be correct. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997) (citing Green

v. Scully, 850 F.2d 894, 900 (2d Cir. 1988) ("'[t]he factual findings of the New York Courts are

presumed to be correct'"). The petitioner must rebut this presumption by "clear and convincing

evidence." § 2254(e)(1).

**B.     Analysis of Petitioner's Claims**

     **1.     _Inconsistent/Repugnant Verdict (Claim 1)_**[21]

     Petitioner asserts that his conspiracy conviction is "repugnant and legally inconsistent"

because the jury acquitted him of the criminal possession of a weapon charges. (Br. for

Appellant, at 7 (typeface altered from original) (Ex. 1).) Respondent contends that this claim is

procedurally barred and is not cognizable on federal _habeas_ review. (See Resp't's Mem., at

15–17.) Respondent is correct.

     It is clear from the last-reasoned state court decision to address this issue that the claim

was denied as "unpreserved for appellate review (see CPL 470.05(2)". Finley, 894 N.Y.S.2d at

---

[21] I identify the claims as I have listed them in Section II(H) above.

517–18; see Ylst, 501 U.S. at 803.  Section 470.05(2) of the New York Criminal Procedure Law,

known as the "contemporaneous objection rule," provides that:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a
> criminal court during a trial or proceeding is presented when a protest thereto was
> registered, by the party claiming error, at the time of such ruling or instruction or at
> any subsequent time when the court had an opportunity of effectively changing the
> same.

N.Y. Crim. Proc. Law § 470.05(2).  Under this provision, "an objection to a ruling or instruction

of a criminal court must be raised contemporaneously with the challenged ruling or instruction in

order to preserve the objection for appellate review."  Green v. Travis, 414 F.3d 288, 294 (2d

Cir. 2005) (citing People v. Jones, 440 N.Y.S.2d 248 (App. Div. 1981)).  In addition, the

objection "must also be made with sufficient specificity to enable the trial court to respond."  Id.

Plaintiff does not maintain that such a specific, contemporaneous objection was made.

Although the Second Department went on to deny this claim on the merits, its primary reliance

on this state procedural law constitutes an independent and adequate ground for its decision.  See

Harris, 489 U.S. at 264 n.10 (state court decision that relies on a procedural rule to dismiss a

claim, but which, in the alternative, also proceeds to dismiss the claim on the merits, relies on the

independent state law ground for dismissal); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810

n.4 (2d Cir. 2000) (noting that when a state court opines that a claim is "not preserved for

appellate review" and then rules "in any event" that the claim also fails on its merits, the claim

rests on the adequate and independent state law rule which precludes federal habeas review); see

also Wainwright v. Sykes, 433 U.S. 72, 86 (1977) (contemporaneous objection rule constitutes

adequate procedural ground for dismissal); Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir.

1994) (same). Petitioner has not alleged cause and prejudice, nor a fundamental miscarriage of

21

justice, that would permit this Court to circumvent his procedural default and review the merits of Claim 1.[22]  Claim 1 is therefore procedurally barred.

Moreover, even if Petitioner could circumvent the procedural bar to consideration of Claim 1, it is well-settled that repugnancy claims are not cognizable upon federal *habeas* review. See, e.g., Robinson v. Smith, No. 09 Civ. 8222(GBD)(AJP), 2011 WL 1849093, at *26 & n.43 (S.D.N.Y. May 17, 2011) (collecting cases).[23]  Accordingly, Claim 1 must be denied.

### 2.   *Sufficiency of the Evidence Claims (Claims 2–3)*

Petitioner raises several claims relating to the sufficiency of the evidence at trial.  For the reasons that follow, each claim should be denied.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  Jackson v. Virginia, 443 U.S. 307, 315 (1979) (internal quotation marks and citation omitted).  However, on *habeas* review, a claim of legally insufficient evidence will not succeed where, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

---

[22] Although the petition raises several ineffective assistance of trial counsel claims, Petitioner has not argued here that counsel was ineffective for failing to preserve the repugnant verdict claim, so I do not consider whether attorney error establishes cause to overcome Petitioner's procedural default.  See Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001).  I note, however, that Petitioner *did* allege ineffective assistance relating to the repugnancy claim in a § 440.10 motion which he has *not* incorporated into his *habeas* petition.  (See Ex. 8, at 11–13)  Because, as indicated above, Petitioner's repugnant verdict claim is not cognizable on *habeas* review, I do not consider whether it is appropriate to consider the allegations in the unincorporated § 440.10 motion as establishing cause for Petitioner's default with respect to this claim.

[23] Copies of unreported cases cited herein will be mailed to Petitioner as a *pro se* litigant. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009) (per curiam).

elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). A *habeas* petitioner, therefore, "bears a very heavy burden" to show that no rational jury could have found the substantive elements of the offense beyond a reasonable doubt and succeed on such a claim. Fama, 235 F.3d at 811. In addition, "[w]hen it considers the sufficiency of the evidence of a state conviction, [a] federal court must look to state law to determine the elements of the crime." Id. (internal quotation marks and citation omitted).

### i.   Any Federal Evidentiary Sufficiency Claim Remains Unexhausted But Procedurally Barred From *Habeas* Review

As an initial matter, (although not argued by Respondent),[24] a review of Petitioner's Appellate Division brief reveals that any federal insufficiency claim was not raised–and was therefore not fairly presented–to the state courts on direct appeal. See Baldwin, 541 U.S. at 29. First, Petitioner's brief was devoid of reference to "federal cases employing constitutional analysis" or "state cases employing constitutional analysis" with respect to these claims. Daye, 696 F.2d at 194. C.f. Figueroa v. New York, No. 07 Civ. 9864(NRB), 2008 WL 2465124, at *3 n.4 (S.D.N.Y. June 18, 2008) (citation to Jackson was sufficient to fairly present claim challenging the legal sufficiency of the evidence to the state courts); McCoy v. Greiner, No. 02 Civ. 7066(RJS)(RLE), 2008 WL 2309168, at *10 (S.D.N.Y. June 3, 2008) (sufficiency claim was fairly presented where petitioner's brief cited People v. Contes, 60 N.Y.2d 620 (1983), a New York State Court of Appeals case that "relies on the federal constitutional standard for sufficiency of the evidence set forth in Jackson v. Virginia").

---

[24] "A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3).

23

Second, Petitioner's appellate brief did not present his evidentiary claims "in terms so particular as to call to mind" a specific federal constitutional right, nor did it allege a "pattern of facts" so "mainstream" as to specifically call to mind the federal right to due process. Daye, 696 F.3d at 194.  Instead, his arguments centered on the credibility and the weight of the evidence presented, particularly with respect to the testimony of the accomplices.  The brief does not reference the key standard of guilt "beyond a reasonable doubt," or otherwise contend that "no reasonable jury" could find the elements of the offenses for which he was convicted.  C.f. La Touche v. Graham, No. 10 Civ. 1388(VB), 2013 WL 5323499, at *18 n.29 (S.D.N.Y. Sept. 23, 2013) (where appellant argued that prosecution "failed to prove [petitioner's] guilt beyond a reasonable doubt," the claim referred to "mainstream" language that called to mind the federal right to due process regarding the sufficiency of the evidence); Brewer v. Lape, No. 06 Civ. 10209(SHS)(MHD), 2010 WL 3565176, at *18 (S.D.N.Y. June 11, 2010) (where appellate brief "labeled the claim as one targeting the weight of the evidence, a claim distinct from the constitutionally-based evidentiary-sufficiency claim," but also described the claim as one where the prosecution failed "to establish guilt beyond a reasonable doubt," a federal due process claim was fairly presented); Taylor v. Poole, 538 F. Supp.2d 612, 618 (S.D.N.Y. 2008) (legal sufficiency of the evidence claim was fairly presented where *pro se* appellate brief argued that the verdict was against the weight of evidence claim in violation of the petitioner's Fourteenth Amendment constitutional rights).  Nor is it apparent from the Second Department's decision that it recognized any federal legal sufficiency of the evidence claim raised on appeal.  See Finley, 894 N.Y.S.2d at 518 (holding, *inter alia,* that "the accomplice testimony at trial was supported by sufficient independent corroborative evidence tending to connect [Petitioner] to the crimes charged," that the "evidence adduced at trial sufficiently linked the defendant to an

escape plan developed with the accomplice to establish the defendant's guilt of the crimes charged," that "the verdict was not against the weight of the evidence," and that "defendant's remaining contentions are without merit"); c.f. Leake v. Senkowski, No. 01 Civ. 7559(SHS)(GWG), 2004 WL 1464889, at *21 (S.D.N.Y. June 30, 2004) (where appellate brief did not specifically refer to federal rights or cite federal case law, but where Appellate Division denied the claim by holding that the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt," it was apparent that the federal claim had been fairly presented to the state courts).

The federal nature of any legal insufficiency claim is therefore unexhausted. Nevertheless, the claim may be "deemed exhausted" because Petitioner no longer has remedies available in state court to exhaust such a record-based claim. See Reyes, 118 F.3d at 139; see also N.Y. Crim. Proc. Law § 440.10(2)(c) (record-based claims not argued on direct appeal must be denied when raised in state post-conviction motion). In order to circumvent this procedural default and obtain review of the merits of the claim, Petitioner would have to establish "cause" and "prejudice," or a "fundamental miscarriage of justice." See Schlup, 513 U.S. at 324; Harris, 489 U.S. at 262. Although Petitioner raises a separate claim of ineffective assistance of appellate counsel (Claim 6(b)), which could be construed to allege "cause" for this procedural default, Petitioner does *not* maintain that appellate counsel was ineffective for failing to raise a legal insufficiency of the evidence claim on direct appeal. Instead, Petitioner argues that appellate counsel was ineffective for failing to argue on direct appeal that *trial counsel* was ineffective for failing to challenge the legal sufficiency of the prosecution's evidence and preserve the claim for direct appeal. (Claim 6(b)(i); see also Pet'r's *Error Coram Nobis* Mem.

of Law.)  He does *not* independently argue that appellate counsel was ineffective for failing to raise a claim based on Jackson.

Because Petitioner has not presented to the state courts a claim that *appellate counsel* was ineffective for failing to challenge the sufficiency of the evidence, this Court may not consider that unexhausted argument as cause to circumvent Petitioner's procedural default.  See DiSimone v. Phillips, 461 F.3d 181, 191 (2d Cir. 2006) (citing Edwards, 529 U.S. at 451–52 and Sweet v. Bennett, 353 F.3d 135, 141 n.7 (2d Cir. 2003) ("ineffective assistance of appellate counsel claims cannot constitute 'cause' for procedural default unless first presented in state court as an independent constitutional claim"); see also McClesky v. Zant, 499 U.S. 467, 502 (1991) (where a petitioner fails to establish cause to excuse a procedural default, the court need not determine whether he suffered prejudice).  Petitioner does not make any other argument which could be construed establish cause, nor does he allege a fundamental miscarriage of justice.  Accordingly, Petitioner's legal insufficiency claim must be denied as procedurally barred.

      ii.      **Even if Petitioner's Claims Were Not Procedurally Barred, They Are Without Merit**

            a.      *The Evidence was Sufficient to Convict Petitioner of Attempted Escape in the First Degree*

Petitioner has failed to establish that, at the time he was convicted, no reasonable jury could have found him guilty of attempted escape in the first degree with respect to the April 24, May 6, and May 7, 2003 incidents.  Under New York law, a person is guilty of attempted escape in the first degree when, having been convicted of a felony, and with intent to escape from a detention facility, he "engages in conduct which tends to effect the commission" of an escape from the detention facility.  N.Y. Penal Law § 110.00; id. § 205.15(1).  Further, under New York

26

law, to be found guilty of an attempted crime, an individual must commit an act that comes "dangerously near" the commission of a specifically intended crime.  People v. Naradzay, 11 N.Y.3d 460, 466 (2008) (citing People v. Kassebaum, 95 N.Y.2d 611, 618 (2001)).  The record shows that there was sufficient evidence from which a rational jury could find each element of these offenses beyond a reasonable doubt.

As detailed above, several accomplices testified concerning the details of the escape plan and the three aborted attempts.  Although these witnesses identified Zimmerman as the mastermind behind the scheme, the testimony was clear that the plan called for two prisoners to escape and that Petitioner was the second intended escapee.  The accomplices testified in detail about preparations for the escape including the acquisition of two sets of corrections uniforms, badges, and identification cards for the prisoners to use when they exited the facility.  There was testimony describing the purchase of a motorcycle, which was transported to Ossining for the get-away.  Accomplices also procured weapons and ammunition, and brought them into the prison.  There was testimony that Petitioner participated, along with Zimmerman, in phone calls wherein details of the plan were discussed, using the mobile phone that Wilson smuggled into the facility.

The evidence at trial also established that Petitioner was present in the visitor's room at the time of each escape attempt.  Petitioner's visitor's room appearances also coincided with scheduled  shift changes at the facility.  This evidence dovetailed with accomplice testimony that the escape plan called for an accomplice to enter the facility along with corrections officers during a shift change and to meet Petitioner and Zimmerman in a hallway near the visitor's room.  A rational jury could have believed the accomplice testimony that Petitioner's presence in the visitor's room at the appointed times was not coincidental.  A rational jury could therefore

27

have concluded that Petitioner's actions tended to effect the commission of an escape, and that the prisoners came "dangerously near" to achieving their goal. Naradzay, 11 N.Y.3d at 466. I note that the credibility of any of the accomplices' testimonies is not reviewable by a federal *habeas* court. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983); see also United States v. Kinney, 211 F.3d 13, 18 (2d Cir. 2000) (quoting United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)) ("In analyzing a sufficiency of the evidence claim, '[w]e defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence.'").

### b.   *The Evidence was Sufficient to Convict Petitioner of Promoting Prison Contraband in the Second Degree*

Petitioner has failed to establish that, at the time he was convicted, no reasonable jury could have found him guilty of promoting prison contraband in the second degree. Under New York law, "[a] person is guilty of promoting prison contraband in the second degree when . . . [b]eing a person confined in a detention facility, he knowingly and unlawfully makes, obtains or possesses any contraband." N.Y. Penal Law § 205.20(2). The record indicates that there was sufficient evidence from which a rational jury could find each element of this offense beyond a reasonable doubt. As discussed above, accomplices testified that cell phones were smuggled into the prison for the prisoners to use in connection with the escape plan. There was testimony that accomplices received phone calls from Zimmerman and that Petitioner participated in at least some of those calls. Records introduced in evidence showed that the cell phones that accomplices testified were used by Petitioner and Zimmerman were in use while the prisoners were incarcerated. A reasonable juror could conclude from this evidence that Petitioner possessed a cell phone while confined in Sing Sing.

**c.**       ***The Evidence was Legally Sufficient to Convict Petitioner of***
***Conspiracy in the Fourth Degree***

Petitioner has also failed to establish that, at the time he was convicted, no reasonable

jury could have found him guilty of conspiracy in the fourth degree.  Under New York law, "[a]

person is guilty of conspiracy in the fourth degree when, with intent that conduct constituting . . .

a class B or class C felony be performed, he or she agrees with one or more persons to engage in

or cause the performance of such conduct."  N.Y. Penal Law § 105.10(1).  Criminal possession

of a weapon in the second degree constitutes a class C felony, and the crime is committed where

a person, "with intent to use the same unlawfully against another . . . possesses a loaded firearm .

. . ."  Id. § 265.03(2), amended by 2005 N.Y. Sess. Laws ch. 764, § 3 (2005).  In addition, under

New York law, to prove the existence of any conspiracy, proof that "one of the conspirators"

engaged in an "overt act" "in furtherance of the conspiracy" is required.  Id. § 105.20.

Here, there was sufficient evidence from which a rational jury could find each element of

a conspiracy to criminally possess a weapon offense beyond a reasonable doubt.  As detailed

above, the evidence showed that there was an elaborate escape plan which called for Petitioner

and Zimmerman to walk out of the prison during a shift change, disguised as guards and armed

with guns that had been smuggled into the facility.  Accomplices testified that two firearms were

acquired for use in the escape, and that both weapons were carried–loaded–into the prison to

facilitate the escape.  Given the evidence of Petitioner's participation in the planning and

preparations for the escape attempts described above, a reasonable jury could easily conclude

that Petitioner was guilty of conspiracy to possess a firearm.  Petitioner's acquittal on the

attempted criminal possession of a weapon charge does not undermine the sufficiency of the

evidence on the conspiracy charge.

**d.**     ***The Sufficiency of Corroboration Evidence is a State Law Matter that is Not Cognizable upon Federal Habeas Review***

To the extent that Petitioner's claims are based upon contentions that his liability was not established because the accomplices' testimony was not adequately corroborated under New York law, or that the accomplices' testimonies were corroborated through inadmissible or unreliable evidence, those contentions present the Court with state law issues that are not cognizable upon federal *habeas* review.

It is well-established that there is no federal rule prohibiting a conviction based, in whole or in part, on uncorroborated accomplice testimony. See Caminetti v. United States, 242 U.S. 470, 495 (1917); see also, e.g., United States v. Gordon, 987 F.2d 902, 906 (2d Cir. 1993) (internal citation omitted) ("A conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt.  Any lack of corroboration goes to the weight of the evidence, not to its sufficiency, and a challenge to the weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal."); Rodrigues v. Kaplan, No. 11 Civ. 132(NAM)(RFT), 2014 WL 1875346, at *9 (N.D.N.Y. May 9, 2014) (collecting cases); Nylander v. Smith, No. 07 Civ. 457(SLT), 2010 WL 1292297, at *4–5 (E.D.N.Y. Mar. 30, 2010) (even if petitioner's legally insufficient evidence claim is not procedurally barred, claim is not cognizable on *habeas* review because it is based on New York's accomplice-corroboration rule); Martinez v. Phillips, No. 04 Civ. 8617(RPP), 2009 WL 1108515, at *15–16 (S.D.N.Y. Apr. 24, 2009) (same); see N.Y. Crim. Proc. Law § 60.22 (under New York law, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative

30

evidence tending to connect the defendant with the commission of such offense").[25]

---

[25] In any event, the record reveals that sufficient, admissible evidence was introduced to corroborate the testimony of the accomplices. The corroboration standard under New York law is not difficult to satisfy:

> The corroborative evidence required by [N.Y. Crim. Proc. Law § 60.22] need not be powerful in itself. The corroborative evidence need not show the commission of the crime; it need not show that defendant was connected with the commission of the crime. It is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth. [T]he role of the additional evidence is only to connect the defendant with the commission of the crime, not to prove that he committed it. The accomplice testimony, if credited by the jury, may serve the latter purpose. Indeed, we have said that much less evidence and of a distinctly inferior quality is sufficient to meet the slim corroborative linkage to otherwise independently probative evidence from accomplices.

People v. Reome, 15 N.Y.3d 188, 191–92 (2010) (internal quotation marks and citations omitted). Accordingly, "[c]orroborative evidence need not prove the entire case against the defendant, or prove the crime itself, or corroborate every element of the accomplice's testimony." People v. Koopalethes, 560 N.Y.S.2d 683, 685 (App. Div. 1990).

The corroborative evidence in this case included, among other things: (1) testimony of Santiago–who was not an accomplice–that Petitioner had inquired about streets surrounding the prison and about train schedules, and had informed her that he would be leaving the prison soon, despite having years left to serve on his sentence; (2) receipts of purchases made at the law enforcement supply store; (3) an audio recording of a conversation between Belnavis and Wilson, in which Zimmerman's voice is also heard, discussing the law enforcement supply store; (4) testimony by Daughtry that he saw Dubose's caller ID and heard Zimmerman's voice on the phone after Daughtry arrested Dubose; (5) cell phone records documenting calls made and received by the cell number attributed to Zimmerman and Petitioner which dovetailed with accomplice testimony concerning calls in which the inmates participated; (6) cell phone records and inmate frisk logs showing that no calls were made from this cell phone during the times Petitioner was in the visitor's room or after he was transferred to another facility; (7) visitor log books and inmate frisk logs showing that Petitioner arrived at the visitor's room at times that coincided with the planned escapes; (8) the duffle bag containing corrections officer uniforms, badges, and identification cards, as well as a canister of pepper spray, left behind by Dubose inside the prison on May 7, 2003; and (9) the items recovered from Belnavis's car, including 9 mm and .38 caliber ammunition. A reasonable jury could have found, under state law, that this evidence helped to "satisfy [them] that the accomplice[s were] telling the truth" in a way that "tend[ed] to connect" Petitioner to the attempted escapes. Reome, 15 N.Y.3d at 192 (internal quotation marks and citations omitted).

Accordingly, this aspect of Claim 2 must be denied.

          **e.**    ***The Weight of the Evidence is a State Law Matter that is Not Cognizable upon Federal Habeas Review***

To the extent that Petitioner argues that the jury's verdict was against the weight of the

evidence, it is well-established that such a claim does not present a federal question cognizable

upon *habeas* review.  See, e.g., McKinnon v. Superintendent, Great Meadow Corr. Facility, 422

———————————

    Further, the extent to which Petitioner challenges the admissibility of corroboration evidence, such an argument also does not present a federal question necessary for *habeas* review. See Estelle v. McGuire, 502 U.S. 62, 72–75 (1991); see also, e.g., Kanani v. Phillips, No. 03 Civ. 2534(PKC)(AJP), 2004 WL 2296128, at *21 (S.D.N.Y. Oct. 13, 2004) (collecting cases and stating that "[t]he rule forbidding 'bolstering' is a state law standard, and a claim that a witness's testimony constituted improper bolstering does not state a federal constitutional claim cognizable on habeas corpus"); Diaz v. Greiner, 110 F. Supp.2d 225, 234 (S.D.N.Y. 2000) (bolstering claim arises solely under state evidentiary law, and therefore is not cognizable upon federal *habeas* review); Vega v. Berry, No. 90 Civ. 7044(LBS), 1991 WL 73847, at *2 (S.D.N.Y. Apr. 29, 1991) (citations omitted) ("[a]lthough bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process right to a fair trial").  A *habeas* court may grant the writ on the basis of an evidentiary ruling only if the error "'so infused the trial with unfairness as to deny due process of law.'"  Estelle, 502 U.S. at 75 (quoting Lisenba v. California, 314 U.S. 219, 228 (1941)).

    Here, assuming *arguendo* that Investigator Daughtry's testimony *did* improperly bolster the accomplices' statements, any such bolstering was plainly harmless in light of the other corroboration evidence detailed above.  See, e.g., People v. Hughes, 981 N.Y.S.2d 158, 161 (App. Div. 2014) (improper bolstering was harmless where it constituted a brief repetition of other evidence, was given as background information to explain the actions of police, and/or it was harmless in light of the overwhelming evidence of guilt).  Further, contrary to Petitioner's contention, Santiago's testimony was clearly relevant to show that Petitioner planned to escape. See People v. Primo, 96 N.Y.2d 351, 355–56 (2001) (internal quotation marks and citations omitted) ("evidence is relevant if it tends to prove the existence . . . of a material fact, i.e., a fact directly at issue in the case" but a court may "exclude relevant evidence if its probative value is outweighed by . . . undue prejudice to the opposing party, confusing the issues or misleading the jury" such as where the evidence has merely "slight, remote or conjectural significance").

    In any event, the state court's decision that the evidence was sufficient cannot be said to have unreasonably applied clearly established *federal* law in its interpretation and application of New York's accomplice corroboration and evidentiary rules.

32

F. App'x 69, 75 (2d Cir. 2011) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); Garrett v. Perlman, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (a weight of the evidence claim is a state law claim arising under N.Y. Crim. Proc. Law § 470.15 and therefore does not present a federal question); Douglas v. Portuondo, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002) (a weight of the evidence claim is "an error of state law, for which habeas review is not available"); see also Estelle, 502 U.S. at 67–68 ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  Accordingly, Claim 3 must be denied on this basis.

### f.    *Petitioner was Not Convicted of Any Offense Under an Accessorial Theory of Liability*

   To the extent that Petitioner asserts that there was insufficient evidence to convict him under an accessorial theory of liability, the argument is without merit.  Contrary to the premise of his argument, Petitioner was not *convicted* of any offense under an accessorial liability theory of liability.  Although the trial court did instruct the jury on the elements of accessorial liability, it did so only with respect to the bribery count–the only count for which such a theory of liability would make sense.[26]  (T: 2312–19.)  The jury found Zimmerman guilty on the bribery count but *acquitted* Petitioner.  In any event, it is clear that accessorial liability was not required to convict

---

[26] Wilson and Belnavis testified that Wilson provided Belnavis and Johnson with information concerning the layout of Sing Sing, the operations of the facility, corrections officer uniforms, and staff badges, and that Wilson permitted the accomplices to photograph her identification card so that they could create false identification cards, in exchange for cash.  The women also testified that Wilson smuggled in cell phones for Zimmerman in exchange for more cash.  However, it was Belnavis who actually provided Wilson with these monetary benefits–not Petitioner or Zimmerman.  (See T: 1367–74, 1449–54.)  It was therefore reasonable to charge the jury on accessorial liability with respect to the bribery count.

Petitioner for attempted escape, conspiracy, or promoting prison contraband because, as discussed above, the evidence was sufficient to show that Petitioner himself engaged in conduct establishing the elements of those offenses.  (See supra Section III(B)(2)(ii).)

Accordingly, Petitioner has failed to meet his heavy burden to demonstrate that no rational jury could have found him guilty.  To the extent that Claims 2–3 raise any exhausted, federal claim, those claims should be denied.

### 3.   *Severance Claim (Claim 4)*

Petitioner asserts that the court erred when it failed to sever his trial.[27]  Specifically, he argues that the jury was influenced by the "overwhelming" evidence establishing Zimmerman's guilt when it found Petitioner guilty.  (See Br. for Appellant, at 48–52.)  Respondent contends that the state court's decision denying this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  (See Resp't's Mem., at 31–34.)  Respondent is correct.

The Second Department's decision on Petitioner's direct appeal represents the last-reasoned state court decision to address this claim.  See Ylst, 501 U.S. at 803.  It is clear that the

---

[27] As noted above, Petitioner withdrew his motion to sever before trial.  (See supra Section II(B).)  Petitioner nonetheless argued on direct appeal that the trial court erred by failing to sever the trial, and the Appellate Division determined that the claim had been "properly denied" by the trial court.  Finley, 894 N.Y.S.2d at 518.  I note that Zimmerman also sought a severance after Petitioner's attorney characterized Zimmerman during his opening statement as "a scam artist" and "a fraud," who "exert[ed] . . . control" over the actions of the other accomplices, and who had a "Svengali like affect on people," and argued that the evidence would show that Zimmerman was entirely responsible for "the plan" to escape.  (See T: 617–24.)  The trial court denied Zimmerman's motion.

court denied the claim on the merits. <u>Finley</u>, 894 N.Y.S.2d at 518.[28]  Accordingly, I address this

claim pursuant to AEDPA's deferential standard of review.

"As a threshold matter, joinder of defendants is a question of state law and, therefore,

does not ordinarily present a question for habeas review." <u>Garcia v. Artus</u>, No. 08 Civ.

1423(JFB), 2010 WL 1816333, at *8 (E.D.N.Y. May 5, 2010); <u>see also, e.g.</u>, <u>Branch v.Marshall</u>,

No. 08 Civ. 8381(PKC)(JLC), 2010 WL 5158632, at *9 (S.D.N.Y. Oct. 12, 2010) (quoting

quoting <u>United States v. Nieves</u>, 354 F. App'x 547, 552 (2d Cir. 2009)) ("The Second Circuit

has described the denial of a motion to sever as 'virtually unreviewable.'").  Nevertheless, a

conviction may be set aside on the basis of a trial court's denial of severance where the petitioner

can show that his "right to a fair trial, as secured under the Fourteenth Amendment, was

abridged." <u>Grant v. Hoke</u>, 921 F.2d 28, 31 (2d Cir. 1990); <u>see, e.g.</u>, <u>Garcia</u>, 2010 WL 1816333,

at *8 (E.D.N.Y. May 5, 2010) (internal quotation marks and citation omitted) ("Although the

Second Circuit has not articulated what standard to apply to a habeas claim based on denial of a

severance motion, a petitioner's burden is at least as great as that of a federal defendant raising

the same claim on direct appeal."); <u>see also, e.g.</u>, <u>Boddie v. Edwards</u>, No. 97 Civ. 7821(MGC),

2005 WL 914381, at *7 (S.D.N.Y. Apr. 20, 2005) ("To grant federal habeas corpus relief on the

basis of an improper denial of severance, a federal court must find that joinder was so prejudicial

as to deny the petitioner a fair trial.").  Such showings are "rare, as a petitioner must demonstrate

prejudice 'so severe that his conviction constituted a miscarriage of justice.'" <u>Branch</u>, 2010 WL

5158632, at *9 (quoting <u>United States v. Yousef</u>, 327 F.3d 56, 150 (2d Cir. 2003)).  "Incidental

---

[28] Specifically, the court held that "since the proof with respect to the two persons charged in connection with a mutual plan involved the same individuals, conduct, and events, the defendant's motion to sever his trial from that of the codefendant was properly denied." <u>Finley</u>, 894 N.Y.S.2d at 518.

35

prejudice, which is almost always present when multiple defendants who played different roles are tried together," is insufficient to warrant reversal.  Mercedes v. Herbert, 01 Civ. 1359(DC), 2002 WL 826809, at *5 (S.D.N.Y. Apr. 29, 2002).  So too is an argument that the defendant "stood a better chance of acquittal" had motion to sever been granted, as the contention "does not amount to a due process violation."  Smith v. Mann, 208 F.3d 203, at *1 (2d Cir. Mar. 21, 2000) (unpublished opinion); see also Zafiro v. United States, 506 U.S. 534, 537 (1993) ("it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials").  "Thus, the pivotal inquiry is whether the prejudice suffered by the petitioner was substantial."  Branch, 2010 WL 5158632, at *9.

Petitioner argues that because there was substantial evidence of Zimmerman's guilt presented at trial, Petitioner was prejudiced because the jury likely attributed Zimmerman's guilt to Petitioner.  I disagree.  Although it is true that the evidence against Zimmerman was weighty, there was also sufficient evidence linking Petitioner of the crimes for which he was convicted. (See supra Section III(B)(2)(ii).)  In particular, accomplices identified both Petitioner and Zimmerman as the intended escapees.  This evidence dispels Petitioner's contention that the jury simply attributed the evidence of Zimmerman's guilt to Petitioner.

Moreover, Zimmerman's defense was not antagonistic to Petitioner–Zimmerman's attorney focused on discrediting the accomplices, and Zimmerman did not implicate Petitioner in his testimony.  As the Second Circuit has explained,

> [A] joint trial is fundamentally unfair where codefendants present mutually antagonistic defenses.  However, a simple showing of some antagonism between defendants' theories of defense does not require severance.  Rather, separate trials are required only upon a showing that the jury, in order to believe the core testimony offered on behalf of one defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant.

Grant, 921 F.2d at 31 (internal quotation marks and citations omitted); see also, e.g., Garcia,
2010 WL 1816333, at *9.[29]  To the extent Petitioner purports to rely on Bruton v. United States,
391 U.S. 123 (1968), wherein the Supreme Court held that the admission of a co-defendant's
incriminatory statement into evidence in a joint trial was prejudicial, that case is simply not
applicable here.  Finally, the trial court instructed the jury not to draw any inference from the
fact that the co-defendants were jointly tried.  (See T: 2291–92.)  This instruction, which the jury
is presumed to have followed, was sufficient to cure any incidental prejudice that may have
resulted from the joint trial.  See Richardson v. Marsh, 481 U.S. 200, 211 (1987).

Accordingly, the state court's denial of this claim cannot be said to have been contrary to,
or an unreasonable application of, clearly established federal law.  Claim 4 should therefore be
denied.

### 4.   *Ineffective Assistance of Trial Counsel Claim (Claim 5)*

Petitioner contends his trial counsel rendered ineffective assistance for failing to make
certain objections at trial and to preserve issues for appeal.  Respondent contends that the state
court's denial of these claims was neither contrary to, nor an unreasonable application of, clearly
established federal law.  (See Resp't's Mem., at 35–41.)  I agree with Respondent to the extent I
recommend that the claims be denied.

The trial court's decision on Petitioner's motion to vacate the judgment of his conviction
represents the last-reasoned state court decision to address these claims.  See Ylst, 501 U.S. at
803.  That court denied the claims both on the basis of Petitioner's failure to comply with state

---

[29] As noted above, Petitioner's defense was at least rhetorically antagonistic to
Zimmerman, because Petitioner's attorney emphasized Zimmerman's central role in the escape
plot during his opening argument, as well as during his cross-examination of accomplices.  (See
supra n.27.)

procedural rules, as well as on the merits.  (See Ex. 10, at 2–5.)  Specifically, the court held that

the ineffective assistance of trial counsel claims were "based on the matters in the record," and

"therefore improperly raised" in a post-conviction motion pursuant to Section 440.10(2)(c) of the

New York Criminal Procedure Law.[30]  (Id. at 2–3.)  It also held that because other claims were

raised and decided on the merits on direct appeal, Petitioner's ineffective assistance of trial

counsel claims involving those matters were precluded from collateral review pursuant to

Section 440.10(a)(2).[31]  (See id. at 3 (noting that "[w]hile defendant now couches his claims in

the language of ineffective assistance of counsel, this is a distinction without a difference, as

counsel cannot be faulted for failing to make arguments and objections that have been

substantively found to lack merit").)  Finally, the court held that, "[i]n any event, even if

defendant's remaining claims were not procedurally barred," the claims were themselves without

merit.  (Id. at 3; see id. at 3–5.)

Although the court went on to deny the claims on the merits, its primary reliance on the

state procedural laws constitutes independent grounds for its decision.  See Harris, 489 U.S. at

264 n.10 (state court decision that relies on a procedural rule to dismiss a claim, but which, in the

_____

[30] A trial court "must deny a motion to vacate a judgment when,"

Although sufficient facts appear on the record of the proceedings underlying the
judgment to have permitted, upon appeal from such judgment, adequate review of
the ground or issue raised upon the motion, no such appellate review or
determination occurred owing to the defendant's unjustifiable failure to . . . raise
such ground or issue upon an appeal actually perfected by him . . . .

N.Y. Crim. Proc. Law § 440.10(2)(c).

[31] A trial court "must deny a motion to vacate a judgment when," "[t]he ground or issue
raised upon the motion was previously determined on the merits upon an appeal from the
judgment, unless since the time of such appellate determination there has been a retroactively
effective change in the law controlling such issue."  N.Y. Crim. Proc. Law § 440.10(2)(a).

alternative, also proceeds to dismiss the claim on the merits, relies on the independent state law ground for dismissal); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000) (noting that when a state court opines that a claim is "not preserved for appellate review" and then rules "in any event" that the claim also fails on its merits, the claim rests on the adequate and independent state law rule which precludes federal *habeas* review).  It is also well-settled that a state court's reliance on Sections 440.10(2)(a) and (c) will constitute adequate state law grounds that preclude a federal court from *habeas* review where the claims are record-based and, if raised on direct appeal, actually denied on their merits.  See, e.g., Murden v. Artuz, 497 F.3d 178, 195–96 (2d Cir. 2007) (reliance on § 440.10(2)(c) is adequate where claim is record-based); Miller v. Boucaud, No. 09 Civ. 6598(MAT), 2012 WL 3262426, at *6–7 (W.D.N.Y Aug. 8, 2012) (reliance on § 440.10(2)(a) is adequate where claim was raised and decided on the merits on direct appeal); c.f., e.g., McDowell v. Heath, No. 09 Civ. 7887(RO)(MHD), 2013 WL 2896992, at *27 (S.D.N.Y. June 13, 2013) (reliance on § 440.10(2)(a) is not adequate where claim is not record-based and therefore could not have been reviewed on direct appeal); Echevarria -Perez v. Burge, 779 F. Supp.2d 326, 339 (W.D.N.Y. 2011) (reliance on § 440.10(2)(a) is not adequate where claim was not actually raised on direct appeal).

It is clear that Petitioner did not raise ineffective assistance of trial counsel claims on direct appeal.  (See Ex. 1.)  Accordingly, Section 440.10(2)(a) would not bar collateral review of such claims or preclude federal *habeas* review.  However, Petitioner's ineffective assistance of trial counsel claims are all clearly record-based.  The trial court therefore properly relied on Section 440.10(2)(c), an independent and adequate reason to deny the claims, which does preclude *habeas* review.

Petitioner asserts ineffective assistance of appellate counsel as cause to circumvent this procedural default. Specifically, he argues that appellate counsel was deficient for failing to include the ineffective assistance of trial counsel claims that Petitioner himself raised in his 440.10 motion. (Claim 6(b).) However, as discussed below, Petitioner cannot establish that appellate counsel was ineffective. Accordingly, Claim 5 must be denied as procedurally barred.

**5.** _**Ineffective Assistance of Appellate Counsel (Claim 6)**_

Petitioner contends appellate counsel rendered ineffective assistance for raising the claims that he did on direct appeal because trial counsel failed to preserve those claims and therefore they were all futile. (Claim 6(a).) He also contends that appellate counsel was ineffective for failing to raise the "meritorious" ineffective assistance of trial claims identified in the petition. (Claims 6(b).) Respondent contends that the state court's denial of these claims was neither contrary to, nor an unreasonable application of, clearly established federal law. (See Resp't's Mem., at 35–46.) Respondent is correct.

The Second Department's decision on Petitioner's application for a writ of _error coram nobis_ represents the last-reasoned state court decision to address these claims. See Ylst, 501 U.S. at 803. It is clear that the court denied the claims on the merits. Finley, 936 N.Y.S.2d at 907. Accordingly, I address Claim 6 pursuant to AEDPA's deferential standard of review.

The Counsel Clause of the Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The Supreme Court has construed this clause to afford criminal defendants the right to the _effective_ assistance of counsel. See McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). A _habeas_ petitioner's ineffective assistance of counsel claim will succeed on the merits if the petitioner proves (1) that counsel's representations "fell below

40

an objective standard of reasonableness," as measured under "prevailing professional norms,"
and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668,
688, 694 (1984).

    *Habeas* petitioners bear the burden of proving both prongs of the Strickland test.  He or
she must therefore prove that his or her attorney's actions were objectively unreasonable as well
as that he or she was prejudiced to the extent that there exists a reasonable probability that the
result of the proceeding would have been different.  Id. at 689, 693.  To show that an attorney's
conduct was unreasonable, the petitioner must overcome "a strong presumption that counsel's
conduct falls within the wide range of reasonable professional assistance." Id. at 689.
Additionally, a "fair assessment of attorney performance requires that every effort be made to
eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's
challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.
Because a petitioner may succeed only by proving both Strickland prongs, "there is no reason for
a court deciding an ineffective assistance claim . . . to address both components of the inquiry if
the defendant makes an insufficient showing on one." Id. at 697.  Finally, although the
Strickland test was formulated in the context of evaluating a claim of ineffective assistance of
trial counsel, the same test is used with respect to claims alleging ineffective assistance of
appellate counsel.  See, e.g., Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

    First, it is apparent that Petitioner cannot meet his burden and show that the result of the
proceeding would have been different had appellate counsel omitted any of the claims that were
raised on direct appeal.  The court did not grant Petitioner any relief from his state court
conviction on the basis of those claims; accordingly, *not* raising them would not have changed

the outcome.  Accordingly, the state court's decision denying Claim 6(a) was neither contrary to,

nor an unreasonable application of, Strickland.

Second, Petitioner maintains that appellate counsel was ineffective for failing to raise

other, "meritorious" claims on direct appeal.  (Claim 6(b).)  However, Petitioner fails to meet his

burden under Strickland.[32]  First, as discussed above, the evidence was legally sufficient to

convict Petitioner of attempted escape, conspiracy, and promoting prison contraband.  (See supra

Section III(B)(2)(ii)(a)–(c).)  The evidence was also sufficiently corroborative and not

inadmissible.  (See supra n.25.)  Finally, the offenses Petitioner was convicted of were not based

on accessorial liability.  Accordingly, Petitioner cannot show that appellate counsel was

ineffective for failing to raise these futile claims, nor can he establish that the result of the

proceeding would have been different had appellate counsel done so.  See, e.g., United States v.

Regalado, 518 F.3d 143, 149 n.3 (2d Cir. 2008) (per curiam) (internal quotation marks and

citation omitted) ("[f]ailure to make a meritless argument does not amount to ineffective

assistance"); United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) (citing Cuevas v.

---

[32] I note that Petitioner argued in his Section 440.10 motion that trial counsel was
ineffective for failing to object to the jury's verdict as repugnant or inconsistent.  (See Ex. 8, at
11–13.)  He also argued in his *error coram nobis* petition that appellate counsel was ineffective
for failing to argue that trial counsel was ineffective for failing to make this objection.  (See Ex.
14, at 4–9.)  However, Petitioner does *not* include such an ineffective assistance of trial counsel
claim in his *habeas* petition.  (See generally Dkt. 2.)  In any event, to the extent that Petitioner
maintains now that appellate counsel was ineffective for failing to raise such a claim concerning
trial counsel on direct appeal, Petitioner cannot establish that the result of the proceeding would
have been different.  Although the Second Department did find that the repugnant verdict claim
was unpreserved for appellate review, it went on to deny the claim on the merits.  Finley, 894
N.Y.S.2d at 518 (finding the claim "unpreserved for appellate review," but holding, "in any
event, the verdict was not repugnant").  Petitioner therefore cannot show that the result of the
proceeding would have been different had appellate counsel raised the claim concerning trial
counsel in his appellate brief.  Accordingly, Petitioner cannot show that the state court's denial
of this portion of Claim 6(b) was either contrary to or an unreasonable application of Strickland.
To the extent Petitioner raises it on *habeas* review, the claim should now be denied.

<u>Henderson</u>, 801 F.2d 586, 592 (2d Cir. 1986) and <u>United States v. Eltayib</u>, 88 F.3d 157, 170 (2d Cir. 1996)) (failure to raise futile objection does not constitute ineffective assistance under <u>Strickland</u>); <u>Stewart v. Greene</u>, No. 05 Civ. 566(WHP)(THK), 2009 WL 4030833, at *21 (S.D.N.Y. Nov. 19, 2009) ("because these claims lack merit . . . , Petitioner cannot establish prejudice resulting from their omission").

Next, contrary to Petitioner's contention, the Appellate Division did review the evidence presented at trial and, determined that the verdict was not against its weight. <u>Finley</u>, 894 N.Y.S.2d at 518. Accordingly, Petitioner cannot show that, had appellate counsel argued that trial counsel was ineffective for failing to make this argument, the result of the proceeding would have been different.

Petitioner also maintains that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to request a missing witness charge once the prosecution failed to call a prison guard to testify at trial. Specifically, Belnavis testified that when she and Rock entered the prison on April 24, 2003, a corrections officer at the front gate noticed a problem with their counterfeit ID cards and directed them to a Deputy's office for further investigation, whereupon Belnavis feigned an asthma attack so they could flee and abort the planned escape. Petitioner contends that because the prosecution did not call the corrections officer who was on duty that day to testify, Belnavis's testimony could not be corroborated and consequently there was insufficient evidence to show that an escape was attempted that day. (<u>See</u> Pet'r's *Error Coram Nobis* Mem. of Law, at 41–45). However, as discussed above, there was sufficient evidence presented to corroborate the testimony of the accomplices under New York law. (<u>See</u> <u>supra</u> n.25.) Moreover, "[c]orroborative evidence need not prove the entire case against the defendant, or prove the crime itself, or corroborate every element of the accomplice's

testimony." People v. Koopalethes, 560 N.Y.S.2d 683, 685 (App. Div. 1990).  Accordingly,

testimony by the correction guard was not essential to corroborate the accomplices' testimony.

Moreover, a party seeking a missing witness charge must demonstrate, among other things, that

the witness would provide non-cumulative testimony.  People v. Gonzalez, 68 N.Y.2d 424, 427

(N.Y. 1986).  A missing witness charge is not appropriate when the witness's testimony would

merely corroborate the testimony of other witnesses. People v. Keen, 94 N.Y.2d 533 (N.Y.

2000).  Since the "missing" corrections officer could only testify about the counterfeit ID

incident that Belanavis herself described, Petitioner cannot show that he would have been

entitled to a missing witness charge even if his trial attorney had requested one.   Petitioner

therefore cannot show that appellate counsel's decision to forgo this claim on direct appeal was

unreasonable, nor that the result of the proceeding would have been different had counsel raised

this claim.  See, e.g., Regalado, 518 F.3d at 149 n.3; Cohen, 427 F.3d at 170; Stewart, 2009 WL

4030833, at *21.

Finally, Petitioner maintains that appellate counsel was ineffective for failing to argue

that trial counsel was ineffective for cross-examining Daughtry about Petitioner's middle name

of "Bruce."  Petitioner maintains that until then, it was not apparent that the individual whom the

accomplices referred to as "Bruce" was actually Petitioner.  (See Pet'r's Error Coram Nobis

Mem. of Law, at 40–41.)  However, as outlined above, other evidence presented at trial linked

Petitioner to the escape scheme.  (See supra Section III(B)(2)(ii).)  Petitioner cannot show that

this additional detail, even if it was improvidently elicited by his attorney, was determinative of

the outcome.  Accordingly, Petitioner cannot show that appellate counsel's decision to forego

this issue on direct appeal was unreasonable, nor that the result of the proceeding would have

been different had counsel raised this argument.  See, e.g., Regalado, 518 F.3d at 149 n.3; Cohen, 427 F.3d at 170; Stewart, 2009 WL 4030833, at *21.

     Accordingly, the state court's denial of Claim 6(b) was neither contrary to, nor an unreasonable application of, Strickland.  The claim should now be denied.

## IV.  CONCLUSION

     For the reasons set forth above, I conclude–and respectfully recommend that Your Honor should conclude–that the petition be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Dated: August 26, 2014_____
     White Plains, New York


                            Respectfully Submitted,



                            Paul E. Davison
                            United States Magistrate Judge


### NOTICE

     Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies

delivered to the chambers of the Honorable Kenneth M. Karas, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601 and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.


A copy of the foregoing Report and Recommendation has been sent to the following:

Steven Finley, *pro se*
02-A-0039
Auburn Prison
P.O. Box 618
Auburn, New York 13024