UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN FINLEY,

                Petitioner,

    v.

HAROLD D. GRAHAM, Superintendent at
Auburn Correctional Facility,

                Respondent.



Case No. 12-CV-9055 (KMK) (PED)

ORDER ADOPTING R&R

KENNETH M. KARAS, District Judge:

      Steven Finley ("Petitioner"), proceeding pro se, brings a Petition for Writ of Habeas

Corpus, pursuant to 28 U.S.C. § 2254 ("Petition"), challenging his conviction for three counts of

attempted escape in the first degree, one count of conspiracy in the fourth degree, and one count

of promoting prison contraband in the second degree. (Pet. for Writ of Habeas Corpus ("Pet.")

(Dkt. No. 2).)

      On August 26, 2014, Magistrate Judge Paul E. Davison ("Judge Davison") issued a

Report and Recommendation ("R&R"), recommending that the Court deny the Petition in all

respects. (Dkt. No. 29.)  Petitioner filed timely Objections to the R&R (Pet'r's Obj's to R&R

("Pet'r's Obj's") (Dkt. No. 31)), which the Court has considered.  For the reasons stated herein,

the Court overrules Petitioner's Objections to the R&R, adopts the R&R in its entirety, and

dismisses the Petition.

I. Background

Although the Court assumes the Parties' general familiarity with the factual and procedural background of this case as set forth in the thorough R&R, the Court will briefly summarize the facts most salient to the Petition.[1]

A. Factual Background

On February 3, 2004, Petitioner was charged, along with fellow inmate Nicholas Zimmerman ("Zimmerman"), with attempted escape in the first degree. (R&R 2.)[2] The felony complaint was superseded by an indictment filed on August 12, 2004, charging Petitioner with one count of bribery in the third degree, three counts of attempted escape in the first degree, five counts of promoting prison contraband in the first degree, two counts of attempted criminal possession of a weapon in the second degree, one count of conspiracy in the fourth degree, and one count of promoting prison contraband in the second degree. (*Id.* at 2–3; *cf.* Pet'r's Obj's Ex. D ("Indictment").)  While Petitioner moved pretrial to sever his trial from Zimmerman, that request was later withdrawn.  Following jury selection, their joint trial began on March 16, 2005. (R&R 3.)

1. The Government's Case

At trial, the prosecution sought to prove that between November 2002 and May 2003 Petitioner conspired with several individuals in three escape plots that would enable Petitioner

---

[1] Unless otherwise indicated, Petitioner has not objected to the factual background provided by Judge Davison, which the Court therefore adopts.

[2] On December 6, 2001, Petitioner was convicted in Nassau County of attempted murder in the second degree, criminal possession of a weapon in the second degree, criminal use of a firearm in the first degree, and assault in the first degree. (R&R 4 (citing *People v. Finley*, 810 N.Y.S.2d 905 (App. Div. 2006)).  He arrived at Sing Sing Correctional Facility ("Sing Sing"), located in Ossining, New York, on January 17, 2002 to begin serving his 20-year sentence.  On April 16, 2002, Zimmerman arrived at Sing Sing. (*Id.*)

2

and Zimmerman to escape from Sing Sing. Having previously confessed to their roles in the scheme, six accomplices testified at trial against Petitioner and Zimmerman. (*Id.* at 2.)[3]

Wilson, a Sing Sing corrections officer, testified that she gave Belnavis and Johnson information about the layout of the facility, prison operations, corrections officer uniforms, and staff badges in exchange for bribes. (*Id.* at 4–5.) Wilson admitted to permitting the co-conspirators to photograph her identification card in order to create false identification cards. Wilson also testified that she smuggled food, toiletries, and cell phones into the prison for Zimmerman. (*Id.* at 5.)

In testifying about the three escape plans and describing the roles of the various co-conspirators, Belnavis admitted to having paid co-conspirators (including Wilson), purchased supplies, coordinated information, sewed phony uniforms from materials obtained at a law enforcement supply store, purchased a motorcycle for Petitioner and Zimmerman to use to flee from the prison, as well as helped Boyd and Johnson create false badges and identification cards. Belnavis and Johnson both testified to obtaining 9mm and .38 caliber handguns to use in the escape. (*Id.*)

Boyd testified, among other things, that she purchased a cell phone for Zimmerman and helped procure the false badges at his request. She further testified that Zimmerman identified Petitioner when she visited Zimmerman at Sing Sing, informing her that both he and Petitioner would be escaping together. (*Id.*)

---

[3] After a state police investigation, Tony Dubose ("Dubose"), Barry Alexander ("Alexander"), Latrina Boyd ("Boyd"), Jatanya Belnavis ("Belnavis"), Tamara Johnson ("Johnson"), and Quangtrice Wilson ("Wilson"), friends or acquaintances of Zimmerman, were eventually arrested in connection with the scheme and subsequently cooperated with the authorities. (R&R 8.)

The accomplices separately testified to numerous phone calls with Zimmerman regarding the planned escapes and identified the phone calls in which Petitioner also participated. Belnavis, Johnson, Alexander, and Dubose—each of whom participated in at least one of the three escape attempts at Sing Sing—described the relevant events as follows. (*Id.*)[4]

### a. The April 24, 2003 Attempt

On April 24, 2003, Belnavis and an individual known as "Rock" entered Sing Sing disguised as corrections officers.[5] They carried a duffel bag containing loaded 9 mm and .38 caliber handguns, additional uniforms, pepper spray, identification cards, and badges. Meanwhile, Alexander and Johnson went to the facility to visit Petitioner and Zimmerman. Belnavis coordinated the visit and had Alexander sign in as Petitioner's visitor, after which Alexander, Johnson, Petitioner, and Zimmerman walked to the back of the visitor's room to talk. When a corrections officer at the front gate noticed a problem with the counterfeit identification cards, he sent Belnavis and Rock to a deputy's office for further investigation.[6] On the way to the office, Belnavis feigned an asthma attack, and the two co-conspirators left the prison, aborting the escape. (*Id.* at 6.)

---

[4] Tiana Santiago ("Santiago"), a prison employee, testified at trial that Petitioner asked in the spring of 2003 for information about the streets that surrounded Sing Sing and about Metro-North train schedules. She did not give him the information. Santiago also testified that Petitioner told her he intended to be out of prison soon. (R&R 5.)

[5] Petitioner refers to this individual as "Roc" but otherwise provides information consistent with that in the R&R. (*See, e.g.*, Pet'r's Obj's 14.)

[6] This corrections officer is the individual to whom Petitioner refers as "the missing guard[]" and "the gate officer." (Pet'r's Obj's 14–15.)

4

### b. The May 6, 2003 Attempt

Belnavis acquired a motorcycle to assist with the second escape attempt. Dubose agreed to ride the motorcycle to Sing Sing, dressed as a corrections officer, and enter the prison with extra uniforms, badges, identification cards, pepper spray, and a loaded weapon, in exchange for $15,000. On May 6, 2003, Dubose rode the motorcycle to Ossining, where he met up with Belnavis, Johnson, and Alexander. Belnavis gave Dubose a duffle bag containing uniforms, identification cards, badges, pepper spray, and at least one loaded handgun. Though Dubose changed into the uniform and strapped a weapon to his person, he did not attempt to enter the facility because he had come too late to blend in with corrections officers arriving for a shift change. With the escape plan again aborted, Alexander and Dubose rode the motorcycle to a residential area and left it chained to a post overnight. (*Id.*)

### c. The May 7, 2003 Attempt

Dubose, Alexander, Belnavis, and Johnson returned to Ossining the following day. When Dubose and Alexander arrived at the spot where they had left the motorcycle, they encountered a police officer who was waiting for a tow truck. At this point the conspirators approached the officer, provided their real identification cards, and told him that the motorcycle had been chained up overnight because it had broken down.[7] The officer recorded its identification information but did not impound the motorcycle. (*Id.* at 7.)

After changing into the corrections officer uniform, Dubose rode the motorcycle to the prison. Alexander, Belnavis, and Johnson waited in cars in the parking lot at Sing Sing while additional conspirators arrived to visit Petitioner and Zimmerman. Dubose, carrying the duffel bag containing contraband and at least one loaded weapon, entered the prison with a group of

---

[7] The officer, in addition to Dubose and Alexander, testified to these events. (R&R 7.)

legitimate corrections officers during a shift change. Officers at the gate noticed a problem with Dubose's badge and sent him to see a deputy. Dubose claimed he had been transferred from Fishkill Correctional Facility but subsequently fled the prison on the pretext of using the restroom, leaving behind the contents of the duffel bag and the counterfeit identification items. Belnavis, Johnson, and Dubose drove away by car while Alexander rode the motorcycle out of Ossining. According to Dubose, Belnavis paid him $2,500 for his efforts. (*Id.*)

Upon realizing that the identification items were fake and that Dubose had exited the facility, the corrections staff opened the duffel bag to discover the extra uniforms, badges, and pepper spray. (*Id.*) Local police were alerted, and, after recognizing the photograph used on Dubose's counterfeit identification card, the officer who had spoken to Dubose and Alexander about the motorcycle provided the state police with the names and contact information that the co-conspirators had given. (*Id.* at 7–8.)

At trial, the Government sought to corroborate the testimony of these accomplices with, inter alia, log books and inmate frisk logs showing that Petitioner and Zimmerman each arrived at the visitor's room at approximately the same time on April 24, May 6, and May 7, 2003, which corresponded to the accomplice testimony concerning the three escape plans; phone records showing calls that matched the testimony about calls to and from a cell phone that Wilson smuggled into the prison for use by Petitioner and Zimmerman; receipts from a law enforcement supply store; the Ossining police officer's notebook containing the names and contact information of Dubose and Alexander; a taped telephone conversation during which Belnavis and Wilson discuss a law enforcement supply store with Zimmerman; the duffle bag abandoned inside Sing Sing after Dubose aborted the May 7, 2003 attempt; the testimony of

Santiago, a non-accomplice, about Petitioner's queries and other statements; and ammunition recovered from Belnavis's vehicle after her arrest. (*Id.* at 8.) [8]

### 2. Petitioner's Case

Petitioner did not call witnesses, present evidence, or testify at trial. His defense focused on discrediting the accomplices by emphasizing their favorable cooperation deals with the prosecution. Petitioner's trial counsel argued that his client had no knowledge of the attempted escapes and stressed that the accomplices were friends of Zimmerman, not Petitioner. (*Id.*)

### 3. Verdict, Motion to Set Aside the Verdict, and Sentence

On April 8, 2005, the jury found Petitioner guilty of three counts of attempted escape in the first degree, one count of promoting prison contraband in the second degree, and one count of conspiracy in the fourth degree. The jury acquitted him of the remaining counts. Petitioner, proceeding pro se, then moved to set aside the verdict, pursuant to § 330.30 of N.Y. Criminal Procedure Law ("CPL"), on the basis that: (1) the evidence before the jury was insufficient to support his conviction based on accessorial liability; (2) trial counsel provided ineffective assistance; and (3) Petitioner was denied his right to be present at side-bar conferences. After denying his motion, the trial court on June 7, 2005 sentenced Petitioner to an aggregate term of 6 to 12 years imprisonment. The court ordered that the sentence run consecutively with the undischarged portion of the sentence Petitioner was serving at the time of the attempted escapes. (*Id.* at 9.)

---

[8] The Court notes Petitioner's objection to Judge Davison's conclusion "that the prosecution's evidence sufficiently corroborated the accomplice testimony," (Pet'r's Obj's 10), and addresses the substance of his opposition below.

B. Procedural Background

     Since his sentencing, Petitioner has filed multiple state and federal court appeals and petitions. The R&R comprehensively recounts Petitioner's filings and the claims raised therein, which the Court will briefly review. (*See id.* at 10–13.)

     1. Direct Appeal

     Represented by new counsel, Petitioner raised the following claims on direct appeal: (1) the jury's guilty verdict on the conspiracy charge was legally inconsistent and/or repugnant; (2) there was insufficient evidence upon which to convict him; (3) the verdict was against the weight of the evidence; and (4) the trial court erred by failing to sever the trial. (R&R 10.) The Second Department affirmed the conviction on February 9, 2010, *see People v. Finley*, 894 N.Y.S.2d 517 (App. Div. 2010), and the New York State Court of Appeals denied leave to appeal on May 19, 2010, *see People v. Finley*, 929 N.E.2d 1011 (N.Y. 2010). Proceeding pro se, Petitioner sought reconsideration of the denial of his leave application, but that request was denied on September 30, 2010. *See People v. Finley*, 935 N.E.2d 820 (N.Y. 2010). Petitioner did not seek a writ of certiorari from the United States Supreme Court. (R&R 10.)

     2. Motion to Vacate the Judgment of Conviction

     By pro se application dated November 15, 2010, Petitioner moved to vacate the judgment of his conviction pursuant to CPL § 440.10 on the ground that his trial counsel provided ineffective assistance for failing to (1) object to the court's jury instruction on the conspiracy offense, (2) object to the repugnant/inconsistent verdict, (3) challenge the sufficiency of the evidence presented at trial, including any corroboration evidence or evidence of accessorial liability, and (4) request a missing witness or favorable inference charge with respect to the corrections officer who manned the front gate on April 24, 2003. By decision and order

dated April 1, 2011, Petitioner's motion was denied. Petitioner sought leave to appeal, which the Second Department denied on September 8, 2011. (*Id.* at 11.)

### 3. Application for Writ of Error Coram Nobis

By pro se application dated July 7, 2011, Petitioner sought a state writ of error corum nobis on the grounds that appellate counsel was ineffective for raising unpreserved claims on direct appeal and failing to raise claims for ineffective assistance of trial counsel. (*Id.* at 11–12.) By decision and order dated January 24, 2012, the Second Department denied the application. *See People v. Finley*. 936 N.Y.S.2d 907 (App. Div. 2012). Petitioner sought leave to appeal, which the New York State Court of Appeals denied on April 18, 2012. *See People v. Finley*, 968 N.E.2d 1004 (N.Y. 2012).

### 4. Petition for Federal Writ of Habeas Corpus

Petitioner timely filed the instant Petition on December 11, 2012, within the one-year statute of limitations period prescribed by 28 U.S.C. § 2244(d)(1)(A). Petitioner asserts several grounds for relief, which Judge Davison has classified into five categories: (1) inconsistent and/or repugnant verdict, (2) sufficiency of the evidence, (3) severance, (4) ineffective assistance of trial counsel, and (5) ineffective assistance of appellate counsel.

## II. Discussion

### A. Applicable Law

#### 1. Review of a Magistrate Judge's R&R

A district court reviewing a report addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation. The

9

objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made

"[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also*

28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal

Rule of Civil Procedure 5(b)(2)(C)–(F), *see* Fed. R. Civ. P. 6(d), for a total of 17 days.

    Where a party timely submits objections to a report and recommendation, as Petitioner

has done here, the district court reviews de novo the parts of the report to which the party

objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). In contrast, "[a] district court

evaluating a magistrate judge's report may adopt those portions of the report to which no

'specific, written objection' is made, as long as the factual and legal bases supporting the

findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."

*Adams v. N.Y.S. Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ.

P. 72(b)(2)), *aff'd sub nom. Hochstadt v. N.Y.S. Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013).

    2.  Habeas Corpus Review

    "Habeas review is an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621

(1998), and a petitioner seeking a writ of habeas corpus must comply with the strict requirements

of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), *see* 28 U.S.C. § 2254.

First, a federal habeas petition must be timely, i.e. submitted within AEDPA's one-year statute of

limitations. *Id.* § 2244(d). The limitations period is subject to equitable tolling, which is

warranted only when a petitioner has shown "(1) that he [or she] has been pursuing his [or her]

rights diligently, and (2) that some extraordinary circumstances . . . prevented timely filing."

*Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted).

    Second, a petitioner must have exhausted his or her federal constitutional claims in state

court. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Sepulveda v. New York*, No. 08-CV-5284, 2013

10

WL 1248379, at *2 (S.D.N.Y. Mar. 26, 2013) ("[U]nexhausted claims generally may not be considered on habeas review."). To satisfy the exhaustion requirement, a petitioner must have presented to the state court "all of the essential factual allegations" and "essentially the same legal doctrine" asserted in the federal habeas petition. *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191–92 (2d Cir. 1982) (en banc); *see also Chellel v. Miller*, No. 04-CV-1285, 2008 WL 3930556, at *4 (E.D.N.Y. Aug. 21, 2008) ("A petitioner must present the substance of a habeas corpus claim to the state court, including its federal constitutional dimension, before a federal habeas court can consider it."). In addition, "[a] habeas petitioner satisfies the exhaustion requirement if he [or she] has presented his [or her] claims for post-conviction relief to the highest state court." *Haddock v. Second App. Ct.*, No. 10-CV-3442, 2013 WL 3640150, at *4 (S.D.N.Y. July 15, 2013); *see also Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (noting that exhaustion requires habeas relief be presented to the highest state court).

Third, a federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (internal quotation marks omitted); *see also Lisojo v. Rock*, No. 09-CV-7928, 2010 WL 1223086, at *21 (S.D.N.Y. Mar. 31, 2010) (noting that preclusion of federal review is proper when "the last state court to render judgment . . . clearly and expressly state[s] . . . that its judgment rest[ed] on a state procedural bar" (internal quotation marks omitted)), *adopted by* 2010 WL 1783553 (S.D.N.Y. Apr. 29, 2010) (third and fourth alterations in original). In "exceptional cases," the "exorbitant application of a generally sound [state procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). Furthermore, a federal court will not "consider claims that have not

11

been exhausted by fair presentation to the state courts, unless the petitioner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009) (citations omitted) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Once these three procedural hurdles are cleared, AEDPA provides that a habeas petitioner is entitled to habeas corpus relief only if he or she can show that "the state court unreasonably applied law as established by the Supreme Court in ruling on [the] petitioner's claim, or made a decision that was contrary to it." *Cousin v. Bennett*, 511 F.3d 334, 337 (2d Cir. 2008) (internal quotation marks omitted); *see also Woodford v. Visciotti,* 537 U.S. 19, 25 (2002) (per curiam) ("[I]t is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner."); *Lisojo*, 2010 WL 1223086, at *18 (noting that federal courts pay "the state court's adjudication a high degree of deference [such that] [i]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly established law to the record in an unreasonable manner" (citations and internal quotation marks omitted)). "While the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in [the Second] Circuit that the objectively unreasonable standard of § 2254(d)(1) means that [the] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (alterations, italics, and internal quotation marks omitted); *see also Schriro v. Landrigan,* 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes that state court's determination was incorrect but whether the determination was unreasonable—a substantially higher threshold."). Consequently,

12

a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different from that of the state court because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter,* 562 U.S. 86, 102 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 202–03 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state] Supreme Court to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [state] Appellate Division did—and indeed we are troubled by the outcome we are constrained to reach—we . . . must defer to the determination made by the state court . . . ." (citation omitted)).

Because Petitioner is appearing before the Court pro se, the Court will consider all of Petitioner's submissions in keeping with the special solicitude afforded to pro se litigants. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("[A] court is ordinarily obligated to afford a special solicitude to pro se litigants" because such litigants "generally lack[] both legal training and experience" (italics omitted)). However, the Court's solicitude does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted).

B. Analysis

While Petitioner does not clearly identify all his distinct objections, the Court, in construing his allegations liberally, considers Petitioner to have raised the following objections to Judge Davison's R&R:

    1) Objections Relating to Sufficiency of the Evidence
        a. Judge Davison erroneously found "that the prosecution's evidence sufficiently corroborated the accomplice testimony," (Pet'r's Obj's 10);

13

      b.  Judge Davison failed to recognize that "the prosecution premised the escape attempt charges . . . on an accessorial liability theory," (*id.* at 13);

2)  Objection Relating to Ineffective Assistance of Trial Counsel
      Judge Davison failed to recognize that CPL § 440.10(2)(c) "is *not* regularly followed where, as here, the claims involve ineffective assistance of counsel" and thus erroneously concluded that "the [state] court's ruling rested on an []adequate state procedural ground" precluding habeas review, (*id.* at 7);

3)  Objections Relating to Ineffective Assistance of Appellate Counsel
      a.  Judge Davison erroneously found "that appellate counsel's performance did not rise to the level of violating the Sixth Amendment and *Strickland* [*v. Washington*, 466 U.S. 668, (1984)]," (*id.* at 8–9);
      b.  Judge Davison's "disregard for the cumulative errors of both trial and appellate counsel has potentially impacted his ability to recognize the prejudice to which [Petitioner] was subjected and the state [court]'s unreasonable application of clearly established U.S. Supreme Court law," (*id.* at 17).

### 1.  Objections to Sufficiency of the Evidence

Reiterating his argument that "the prosecution's evidence failed to substantiate each of the requisite elements of the crimes charged and theory of law they were premised upon[,]" Petitioner objects to the R&R's conclusion "that the prosecution's evidence was legally sufficient to sustain a conviction." (*Id.* at 9–10.)[9]  He does not, however, contest Judge Davison's determination that "Petitioner's legal insufficiency claim[s] must be denied as procedurally barred." (R&R 26.)  The Court, upon review of the R&R, finds that "the factual and legal bases supporting" this threshold issue "are not clearly erroneous or contrary to law." *Adams*, 855 F. Supp. 2d at 206.  Though thus in a position to adopt Judge Davison's

---

[9] Petitioner contends that "[h]ad this evidence been sufficiently challenged[,] trial counsel could have established that the evidence fails to corroborate the accomplice testimony regarding [the] alleged escape attempts." (Pet'r's Obj's 12.)  Yet, as discussed below in greater detail, "the record reveals that sufficient, admissible evidence was introduced to corroborate the testimony of the accomplices." (R&R 31 n.25.)

recommendation that it deny Petitioner's evidentiary sufficiency claims, the Court nonetheless addresses the merits of his relevant objections.[10]

### a. Sufficiency of Corroborative Evidence

In contesting "that the prosecution's evidence sufficiently corroborated the accomplice testimony," Petitioner alleges that the R&R "applie[d] the *wrong* standard for what constitutes corroborative evidence in New York by citing *People v. Reome*, [933 N.E.2d 186 (N.Y. 2010)]." (Pet'r's Obj's 10.)  He further contends that Judge Davison "turn[ed] a blind eye to" shortcomings in "the 'corroborative' evidence." (*Id.* at 12.)  These arguments, however, are based solely on New York's accomplice corroboration requirement. *See* N.Y. Crim. Proc. Law § 60.22.[11]

"[T]he purpose of federal habeas corpus is to ensure that state convictions comply with the *federal* law in existence at the time the conviction became final." *Sawyer v. Smith*, 497 U.S. 227, 234 (1990) (emphasis added).  As Judge Davison correctly underscored, "there is no federal rule prohibiting a conviction based, in whole or in part, on uncorroborated accomplice testimony." (R&R 30 (citing, inter alia, *Nylander v. Smith*, No. 07-CV-457, 2010 WL 1292297,

---

[10] In doing so, the Court, like Judge Davison, (*see generally* R&R 26–34), assumes for argument's sake that Petitioner's legal insufficiency claims were not procedurally barred.

[11] Under § 60.22(1), "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. Crim. Proc. Law § 60.22(1).  As Petitioner emphasizes, "*in New York* . . . there is a statute that strictly prohibits a defendant's conviction based upon insufficiently corroborated accomplice testimony." (Pet'r's Obj's 15 (emphasis added) (citing N.Y. Crim. Proc. Law § 60.22).)  Yet, his Objections also acknowledge that "a petitioner must show . . . that his underlying constitutional claims are based on clearly established *U.S. Supreme Court law*." (*Id.* at 16 (emphasis added).)  Notwithstanding Petitioner's suggestion otherwise, the fact that "[a] defendant . . . has a federal constitutional right under the [Fourteenth] Amendment to have [e]qual [p]rotection of the law and to be free of deprivations of liberty without due process," (*id.* at 15), does not place the corroboration standard in the realm of federal law; the former simply does not follow from the latter.

at *4–5 (E.D.N.Y. Mar. 30, 2010) (holding that the petitioner's legally insufficient evidence claim, even if not procedurally barred, is not cognizable on habeas review because it is based on New York's corroboration rule)).) *See also Caminetti v. United States,* 242 U.S. 470, 495 (1917) ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."); *Smithwick v. Walker,* 758 F. Supp. 178, 186 (S.D.N.Y. 1991) (noting that New York safeguards regarding accomplice testimony exceed those of the federal Constitution), *aff'd,* 948 F.2d 1278 (2d Cir. 1991). Thus, putting aside the procedural bar, the R&R appropriately denied Petitioner's insufficient corroboration claim on the basis that "those contentions present the Court with state[-]law issues that are not cognizable upon federal habeas review." (R&R 30 (italics omitted).)[12] Corroboration standards, and Petitioner's objection in that regard, are matters of *state* law and thus not cognizable in a federal habeas petition. *See Dawson v. Donnelly,* 111 F. Supp. 2d 239, 251 (W.D.N.Y. 2000) ("[Section] 60.22(1) . . . is a state law and not a Constitutional requirement, and may not be raised in a [f]ederal habeas petition."); *see also White v. Conway,* No. 07-CV-1175, 2011 WL 1315592, at *20 (N.D.N.Y. Mar. 31, 2011) (affirming that "no cognizable federal issue is presented by a habeas claim challenging [a state-law issue]"); *Garcia v. Artus,* No. 08-CV-1423, 2010 WL 1816333, at *14 (E.D.N.Y. May 5, 2010) ("As a threshold matter, to the extent that [the] petitioner relies on state

---

[12] The Court notes that, even under "the more demanding test for corroborative evidence set forth in *People v. Hudson,*" *People v. Rodriguez,* 999 N.E. 2d 1148, 1149 (N.Y. 2013) (citing *People v. Hudson,* 414 N.E. 2d 385, 387 (N.Y. 1980), *overruled by People v. Reome,* 933 N.E.2d 186 (N.Y. 2010)), sufficient evidence to corroborate the accomplice testimony was introduced at Petitioner's trial. For one, the Second Department expressly cited *Hudson* in concluding that "the accomplice testimony at trial was supported by sufficient independent corroborative evidence tending to connect him to the crimes charged." *Finley,* 894 N.Y.S. 2d at 518. Moreover, in light of the lengthy catalogue of "corroborative evidence" offered at trial to confirm the accomplice testimony, (R&R 31 n.25), the Court finds that this abundance of additional evidence "tends to connect [Petitioner] with the commission of the [crimes]." *Hudson,* 414 N.E. 2d at 389.

law as a grounds for [his] claim, such a claim is not cognizable on habeas review."); *Edwards v. Marshall,* 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (finding the petitioner's argument, which relied on "state-law principles," not cognizable on federal habeas review). Therefore, the Court concludes that, in addition to the procedural bar, Petitioner's claim based on the lack of corroborative testimony is denied.

b. Accessorial Theory of Liability

In objecting to Judge Davison's conclusion that "[he] was not *convicted* of any offense under an accessorial theory of liability[,]" (R&R 33), Petitioner disputes that "the only charge the accessorial liability logically applied to was the bribery count of which [he] was acquitted," (Pet'r's Obj's 10). As the sole support of this objection, Petitioner quotes from the indictment: "The defendants, in the County of Westchester and State of New York . . . while aiding and abetting and acting in concert with each and several other individuals . . . did [enter charge here]." (*Id.* at 13–14 (alterations in original) (citing Indictment.) He thereafter notes "[N.Y. Penal Law] § 20.00 is New York's aiding and abetting statute," (*id.* at 14), but completely disregards the "critical difference" between "being an accessory" and "being . . . an aider and abettor" pursuant to that provision, *see* David C. Brody & James R. Acker, *Criminal Law* 362 (2nd ed. 2010). On one hand, under a theory of accessorial liability, the defendant "does not participate in the commission of the primary offense." *Id.* However, "aiding and abetting requires that the defendant ha[s] given substantial assistance or encouragement to the wrongdoer." *Pittman ex. rel. Pittman v. Grayson*, 149 F.3d 111, 123 (2d Cir. 1998) (internal quotation marks omitted). Given this discrepancy between the language of the indictment and the substance of Petitioner's arguments, the Court finds unavailing his insistence that "an accessorial liability theory" formed the basis of his conviction. (Pet'r's Obj's 13.)

17

Whereas Petitioner merely alleges that "[c]ontrary to the magistrate judge's opinion, the prosecution premised the escape attempt charges . . . on an accessorial liability theory[,]" (*id.*), Judge Davison substantiates his conclusion by pointing to the trial transcript itself. As the R&R notes, "the trial court did instruct the jury on the elements of accessorial liability, . . . [but] only with respect to the bribery count—the only count for which such a theory of liability would make sense." (R&R 33.) Because "the jury . . . *acquitted* Petitioner" of the bribery count, (*id.*; *cf.* Pet. 2 (listing crimes of conviction)), the Court unhesitatingly agrees that "Petitioner was not *convicted* of any offense under an accessorial liability theory of liability," (R&R 33). Moreover, the R&R articulates the strength of the evidence presented against Petitioner, who never objects to the resulting determination of "sufficient evidence linking Petitioner [to] the crimes for which he was convicted." (*Id.* at 36; *see, e.g., id.* at 31 n.25 (listing some of "[t]he corroborative evidence").) The Court, therefore, also agrees with Judge Davison's assessment that, "[i]n any event, it is clear that accessorial liability was not required to convict Petitioner for attempted escape, conspiracy, or promoting prison contraband because . . . the evidence was sufficient to show that Petitioner *himself* engaged in conduct establishing the elements of those offenses." (*Id.* at 33–34 (emphasis added).) *See also Finley*, 894 N.Y.S.2d at 518 ("Testimonial, physical, and documentary evidence adduced at trial sufficiently linked [Petitioner] to an escape plan developed with the accomplice to establish [Petitioner]'s guilt of the crimes charged."). Thus, Petitioner's claim of insufficient evidence establishing accessorial liability, even if not procedurally barred, fails on the merits.

### 2.  Ineffective Assistance of Trial Counsel

Second, Petitioner objects to the R&R's conclusion that "[t]he trial court . . . properly relied on [§] 440.10(2)(c) [as] an independent and adequate reason to deny the claims" for

ineffective assistance of trial counsel. (R&R 39; *see generally* Pet'r's Obj's 2–7.)[13] Though

conceding "perhaps, 'independent[,]'" Petitioner alleges that this rule "is not an *adequate* state

procedural ground necessitating preclusion of habeas review of [his] claims." (*Id.* at 3 (some

italics omitted).) Specifically, he argues that although "§ 440.10(2)(c) is 'firmly established' law

in New York, . . . it is *not* 'regularly followed'" because "there are mixed applications

concerning this matter." (*Id.*)[14]

    "Where a claim is sufficiently based in the record, a state court's reliance on

§ 440.10(2)(c) constitutes an adequate and independent state law ground that ordinarily

precludes a federal court from further habeas review." *La Touche v. Graham,* No. 10-CV-1388,

---

[13] Pursuant to that provision, a trial court may deny a motion to vacate a judgment where, even though "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted . . . adequate [appellate] review of the . . . issue raised . . ., no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him." N.Y. Crim. Proc. Law § 440.10(2)(c).

[14] As part of his argument that "New York courts have long acknowledged the inadequacy of CPL § 440.10(2)(c)," (Pet'r's Obj's 4), Petitioner offers a fleeting challenge to the constitutionality of that provision in contending that "New York's procedural bar statute necessarily infringes upon defendants' fundamental constitutional rights," (*id.* at 6). Yet, in the absence of any authority to sustain this point, and given that the Second Circuit has routinely held § 440.10(2)(c) to be an adequate and independent state ground that precludes federal habeas review, *see, e.g., Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995) (finding habeas review of ineffective assistance claim prohibited where the "[state] court held that review of the claim was procedurally barred under § 440.10(2)(c)"); *Arce v. Smith*, 889 F.2d 1271, 1273 (2d Cir. 1989) (reaffirming that "the failure to raise the issue of ineffective assistance of counsel on appeal is the subject of procedural default"); *see also Acevedo v. Capra*, No. 13-CV-5579, 2014 WL 1236763, at *10 (E.D.N.Y. Mar. 25, 2014) ("The Second Circuit has regularly held that a court's denial of a § 440.10 motion on the basis of the movant's failure to raise an issue on direct appeal is an independent and adequate state ground barring federal habeas review."), *aff'd*, 600 F. App'x 801 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 209 (2015), the Court rejects this argument. Furthermore, the Petition itself presents no such constitutional argument, and "[g]enerally, courts do not consider new arguments and new evidence raised in objections to a magistrate judge's report and recommendation that were not raised, and thus were not considered, by the magistrate judge." *Jones v. Smith*, No. 09-CV-6497, 2012 WL 1592190, at *8 (S.D.N.Y. May 7, 2012) (internal quotation marks omitted).

2013 WL 5323499, at *12 (S.D.N.Y. Sept. 23, 2013) (italics omitted); *see also Bonilla v. Portuondo,* No. 00-CV-2369, 2004 WL 350694, at *9 (S.D.N.Y. Feb. 26, 2004) ("[W]hen a state court judgment rests on independent and adequate state law grounds, including a petitioner's failure to meet state procedural requirements, a federal court may not consider the petitioner's substantive claims."), *adopted by* 2004 WL 1782174 (S.D.N.Y. Aug. 9, 2004). "A procedural bar is 'adequate' if it is based on a rule that is 'firmly established and regularly followed' by the state in question." *Pearson v. Greiner*, No. 02-CV-10244, 2004 WL 2453929, at *9 (S.D.N.Y. Nov. 3, 2004) (report and recommendation) (some internal quotation marks omitted) (citing *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir. 1999)). In determining the propriety of application of a state procedural rule in the context of the instant Action, the Court considers several "guideposts": "(1) whether the alleged procedural violation was actually relied upon in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest." *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee,* 534 U.S. at 381–85).

Here, the trial court clearly relied on § 440.10(2)(c) in denying Petitioner's ineffective assistance claim. (*See* Pet. Ex. C ("Denial of § 440.10 Motion") 2–3 (finding Petitioner's claim procedurally barred because "it is well[-]established that a § 440.10(2)(c) motion with respect to the claimed ineffectiveness of counsel that is based upon matters in the record cannot be made as a substitute for a direct appeal from the judgment").) The first guidepost thus favors a finding of adequacy. *See Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001) ("[T]here can be no doubt that

20

the state court's decision on [the p]etitioner's trial counsel claim rested on an adequate and independent state bar: [he] never raised ineffective assistance of trial counsel in his direct appeal."); *Johnson v. Sabourin*, No. 03-CV-791, 2005 WL 2663039, at \*4 (S.D.N.Y. Oct. 14, 2005) (report and recommendation) (finding the state court's reliance on § 440.10(2)(b) adequate, in part, because the court had cited this rule as the basis for its decision, and the petitioner's ineffective assistance claim could have been heard on the merits if the petitioner had raised it on direct appeal). Moreover, a state court's "express reliance" on a state procedural rule "constitutes an 'independent' state law ground for that decision" even where, as here, "the state court addresses the merits in reaching an alternative holding." *Whitley v. Ercole*, 642 F.3d 278, 286 & n.8 (2d Cir. 2011).

As to the second guidepost, the Court finds that application of the procedural bar of § 440.10(2)(c) was "demanded in the specific circumstances presented." *Cotto*, 331 F.3d at 240.[15] While the New York Court of Appeals has held that, "[g]enerally, the ineffectiveness of counsel is not demonstrable on the main record," *People v. Brown*, 382 N.E.2d 1149, 1149 (N.Y.

---

[15] Petitioner asserts that "some of [his] arguments were grounded on and, in fact, supported with *non*-record based documentary proof." (Pet'r's Obj's 5.) Supposing, arguendo, the Court accepted that he presented "a mixed claim of ineffective assistance that depends, in part, upon matters that do not appear on the record," *People v. Maxwell*, 933 N.Y.S.2d 386, 388 (App. Div. 2011), and thus concluded compliance with § 440.10(2)(c) was not "demanded in the specific circumstances presented," *Cotto*, 331 F.3d at 240, the outcome here would be the same. With the first and third guideposts both supporting the provision as an adequate procedural bar, its application in this case would not be "exorbitant." *See Pierotti v. Walsh*, No. 03-CV-3958, 2015 WL 2337316, at \*14 (E.D.N.Y. May 13, 2015) (determining that the state procedural rule's "application in this case is not 'exorbitant'" where two out of the three guideposts weighed against the petitioner) (citing *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007)).

Moreover, even if this Court may have ruled differently as to the applicability of § 440.10(2)(c) under the circumstances, it has "no authority to question the state's interpretation of its own procedural law under these circumstances." *Whitley*, 642 F.3d at 286; *see also Cotto*, 331 F.3d at 247 ("Our task is not to determine whether [the state court] ruling was correct, but to determine its adequacy to preclude federal habeas review.").

1978); *cf. Bonilla*, 2004 WL 350694, at *10 (noting that "a review of New York caselaw demonstrates that CPL § 440.10(2)(c) is not regularly followed in the context of ineffective[] assistance claims"), some ineffective assistance claims, including those based solely on failures to object, may indeed be properly considered on direct appeal as record-based allegations, *see, e.g., Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003) (finding an ineffective assistance claim "procedurally defaulted for the purposes of federal habeas review" because counsel's failure to object "was particularly well-established in the trial record"); *People v. Crump*, 422 N.E.2d 815, 816 (N.Y. 1981) (finding an ineffective assistance claim "appropriate for resolution on [the] defendant's direct appeal from his conviction" where the "trial court's failure to make any inquiry and the conflict of interest . . . are discernible from the record").

In Petitioner's case, the state court expressly noted that the § 440.10 motion alleged four grounds to support his claim for ineffective assistance of trial counsel:  "counsel failed to object to the [trial c]ourt's jury instructions of the charge of conspiracy; . . . counsel failed to object that the jury verdict was repugnant and inconsistent; . . . counsel, in his trial order of dismissal motion, failed to attack the sufficiency of the evidence . . . [;] counsel failed to request a missing witness charge."  (Denial of § 440.10 Motion 2; *see also* R&R 37 ("Petitioner contends his trial counsel rendered ineffective assistance for failing to make certain objections at trial and to preserve issues for appeal.").)  These are *exactly* the sorts of claims that can be resolved on the face of the record. *See, e.g.*, *Reyes v. Keane*, 118 F.3d 136, 138–40 (2d Cir. 1997) (concluding that the trial record provided a sufficient basis for the ineffective assistance claim based on trial counsel's failure to object to a jury charge); *Rodriguez v. Smith*, No. 10-CV-8306, 2015 WL 6509153, at *15 (S.D.N.Y. Oct. 28, 2015) (holding the petitioner's "ineffective assistance of counsel claim based on . . . his trial counsel['s] fail[ure] to elicit important supporting facts and

make the necessary arguments at the *Huntley* hearing . . . [is] record-based and, therefore, as the

state court found, procedurally barred"); *Walker v. Conway*, No. 04-CV-6056, 2007 WL

9225072, at *33 (W.D.N.Y. June 25, 2007) (finding the ineffective assistance claim procedurally

barred because "trial counsel's failure to object to [the] trial court's jury charge . . . was

particularly well-established in the trial record" (internal quotation marks omitted)), *adopted by*,

2007 WL 3015220 (W.D.N.Y. Oct. 12, 2007).[16]  Because it is a well-settled rule in New York

that such claims should be brought on direct appeal, *see Beauharnois v. Chappius*, No. 12-CV-

1283, 2015 WL 893091, at *14 n.7 (N.D.N.Y. Mar. 2, 2015) ("The Second Circuit . . . [has]

concluded that New York courts uniformly apply [§] 440.10 to bar ineffective assistance of trial

counsel claims that are based on the trial record where, as here, the petitioner has an appellate

lawyer other than his trial attorney, and fails to raise the claim on appeal."); *McDowell v. Heath*,

No. 09-CV-7887, 2013 WL 2896992, at *4 (S.D.N.Y. June 13, 2013) ("Record-based ineffective

assistance of trial counsel claims . . . may be brought on direct appeal and when a petitioner fails

to do so, rejection by a . . . [state] court is an independent and adequate ground precluding the

petitioner from bringing the claim in a federal habeas petition."), the second factor also weighs

against Petitioner.[17]

---

[16] The state court expressly rejected Petitioner's argument "that his counsel's failures to act as described above are not a matter of record because they involve omissions that are by nature *dehors* the record." (Denial of § 440.10 Motion 3.)  Moreover, Petitioner himself seems to concede the record-based nature of his claim for ineffective assistance of trial counsel in asserting that "the trial record is devoid of any specific challenges by trial counsel to the prosecution's proffered corroborative evidence." (Pet'r's Obj's 12.)

[17] To the extent Petitioner looks to *Massaro v. United States*, 538 U.S. 500 (2003), to suggest "that the current procedural bar statute is *not* regularly followed," (Pet'r's Obj's 7), it is worth noting that the Supreme Court's holding did not disturb the principle that a claim must be made on direct appeal when the evidence is fully presented in the trial record, *see Sweet*, 353 F.3d at 141 ("Nothing in *Massaro* alters our view that it remains inappropriate and inefficient to

The third guidepost concerns whether Petitioner "substantially complied with the state rule." *Whitley,* 642 F.3d at 290 (internal quotation marks omitted). Considering he did not raise ineffective assistance of trial counsel on direct appeal, (*see* R&R 39), Petitioner did not substantially comply with § 440.10; indeed, he did not comply with that rule *at all*, *see Johnson,* 2005 WL 2663039, at *5 (holding that the petitioner, despite his belief that the ineffective assistance claim did not appear on the record and thus would not have been reviewed on direct appeal, "should have pursued both avenues of relief and, on appeal, focused his arguments on facts within the record"). In this regard, it bears noting that compliance with this rule serves the legitimate government interest of preventing "[§] 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so." *Sweet,* 353 F.3d at 139 (second and third alterations in original) (quoting *People v. Cooks,* 491 N.E.2d 676, 678 (N.Y. 1986)). Thus, this third and "most important consideration" weighs strongly against Petitioner. *Whitley,* 642 F.3d at 290 (internal quotation marks omitted).

Having determined that § 440.10(2)(c) is an adequate state law ground precluding federal habeas review, this Court need not address the merits of the Petition unless Petitioner can show cause and prejudice to excuse the default. *See Acevedo*, 2014 WL 1236763, at *12 (concluding that a federal court's review of a habeas petition "is constrained by the § 440 court's prior, and proper, invocation of a procedural bar"). A state prisoner can obtain federal habeas review, notwithstanding a procedural default, either by demonstrating "cause for [the] state court default," along with actual prejudice as a result of the violation of federal law, or by

---

allow state defendants to bypass state courts on the substance of state rules, and bring federal habeas challenges without the benefit of state decisions on those state rules.").

demonstrating a sufficient probability that the failure to consider the claim will result in a "fundamental miscarriage of justice." *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000).[18]

To the extent that Petitioner asserts ineffective assistance of counsel as cause to circumvent his procedural default, (*see* Pet. 8 (explaining he did not raise ineffective assistance of trial counsel in his direct appeal because "[a]ppellate counsel refused to raise the issue(s)")), the Court must "review the effectiveness of appellate counsel under . . . AEDPA's deferential standard," *Pierotti*, 2015 WL 2337316, at *14; *cf. Edwards,* 529 U.S. at 451 ("[I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim."). Although his ineffective assistance of trial counsel claim "could have been raised on direct appeal," appellate counsel's "failure to raise it" does not in itself "constitute[] ineffective assistance of counsel." *Pierotti*, 2015 WL 2337316, at *9. In fact, as discussed below, Petitioner cannot establish that appellate counsel was ineffective, and so the claim cannot serve as cause to excuse the above-mentioned procedural default. *See Aparicio*, 269 F.3d at 93 (holding that because the petitioner's claim for ineffective assistance of appellate counsel was meritless, it could not serve as the cause to excuse the procedural default of his claims for ineffective assistance of trial counsel). Accordingly, the Court denies Petitioner's ineffective trial counsel claim and overrules the relevant objections.

---

[18] "The 'fundamental miscarriage of justice' exception is only available in 'extraordinary' cases, 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *See Walker*, 2007 WL 9225072, at *12 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Petitioner cannot take advantage of this exception, as he has not come forward with any new evidence that he is "actually innocent" of the crimes for which he was convicted.

3. Ineffective Assistance of Appellate Counsel

Petitioner further objects to Judge Davison's conclusion "that appellate counsel's

performance did not rise to the level of violating the Sixth Amendment and *Strickland*." (Pet'r's

Obj's 8–9; *see also* R&R 45 (finding "the state court's denial [of the ineffective appellate

counsel claim] . . . was neither contrary to, nor an unreasonable application of *Strickland*").)[19]

Even accepting Petitioner's contention that "the [state] appellate court's decision neither

addresses the facts in [his] case nor the particular issues raised in [his] motion[,]" (Pet'r's Obj's

9), the Court treats his ineffective appellate counsel claim as "adjudicated on the merits" for

habeas purposes. *See Sellan v. Kuhlman,* 261 F.3d 303, 311–12 (2d Cir. 2001) (holding that an

unexplained state-court disposition of a claim can be entitled to AEDPA deference); *see also*

*Francolino v. Kuhlman,* 365 F.3d 137, 141 (2d Cir. 2004) (noting that AEDPA deference applies

where "the Appellate Division concluded its opinion by stating that it had 'considered and

rejected defendants' remaining claims'"); *Jenkins v. Artuz,* 294 F.3d 284, 291 (2d Cir. 2002) ("In

*Sellan*, [the Second Circuit] found that an even more concise Appellate Division disposition—

the word 'denied'—triggered AEDPA deference."). To that end, habeas relief can be granted

only if the state court's decision was "contrary to . . . clearly established [f]ederal law." 28

U.S.C. § 2254(d). The Court's review thus must focus on whether the state court's denial of

Petitioner's claim rested upon an unreasonable application of *Strickland,* which is the federal law

relevant to claims of ineffective assistance. *See Aparicio*, 269 F.3d at 94–95; *see also Smith v.*

---

[19] Petitioner asserts that he "agree[s] with the magistrate judge's assessment of appellate counsel's performance to the extent that the magistrate judge acknowledges that appellate counsel's representation was in fact deficient." (Pet'r's Obj's 8.) He similarly insists that the R&R "castigates appellate counsel's brief noting deficiencies in . . . representation." (*Id.*) However, Judge Davison offered no such opinions and, to the contrary, expressly determined that "Petitioner cannot establish that appellate counsel was ineffective." (R&R 40.)

26

*Robbins,* 528 U.S. 259, 285 (2000) ("[T]he proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*"). Under this standard, a petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court applied *Strickland* incorrectly. Rather, a petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone,* 535 U.S. 685, 699 (2002) (citation omitted).

Furthermore, "[w]hen a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel," that federal court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (some internal quotation marks omitted) (citing *Pinholster,* 563 U.S. at 190 (noting a habeas court must "take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)" (citation and internal quotation marks omitted)).

### a.  Ineffective Trial Counsel Claim

Again contending that "[a]ppellate counsel's failure to raise ineffective assistance of trial counsel as an issue on direct appeal is proof of his deficient performance[,]" Petitioner objects to Judge Davison's determination "that it was not unreasonable [for] appellate counsel to not argue on direct appeal that trial counsel was ineffective . . . ." (Pet'r's Obj's 13–14.) In doing so, he merely reiterates his complaints regarding "appellate counsel's failure to argue on direct appeal that trial counsel was ineffective for, inter alia, failing to request a missing witness charge." (*Id.* at 15–16.) Nonetheless, in reviewing the alleged grounds for ineffective assistance of trial counsel, the Court finds appellate counsel cannot be faulted for failing to raise an ineffective assistance of trial counsel claim on direct appeal because that claim itself is meritless.

Where, as here, a petitioner has asserted that appellate counsel provided ineffective assistance by failing to raise as a ground for relief on appeal trial counsel's ineffective assistance, he or she must necessarily establish that trial counsel was ineffective. *See, e.g., Rolling v. Fischer,* 433 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) ("[T]here can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless."); *Williams v. Goord,* 277 F. Supp. 2d 309, 320 (S.D.N.Y. 2003) ("Because each of the arguments that [the petitioner] asserts should have [been] raised by his appellate counsel as grounds for claiming ineffective assistance of trial counsel themselves fail to satisfy the *Strickland* standard, . . . appellate counsel's failure to raise these claims on appeal likewise cannot reasonably be construed as deficient."). Thus, where the underlying ineffective assistance of trial counsel argument is lacking in merit, appellate counsel cannot be deemed to have acted objectively unreasonably or to have prejudiced the defendant by failing to raise it. *See Vinson v. Brown,* No. 07-CV-2972, 2011 WL 7640001, at *13 (S.D.N.Y. July 11, 2011) ("An appellate counsel does not have an obligation to raise claims which clearly lack merit."), *adopted by,* 2012 WL 1129271 (S.D.N.Y. Mar. 29, 2012). A petitioner has no grounds for relief if he or she cannot, at a minimum, show that appellate counsel had a basis for arguing ineffective assistance of trial counsel.

In that regard, Petitioner contends that "[h]ad this issue been raised emphasizing the insufficiency of the 'corroborative' evidence and trial counsel's failure to properly challenge the prosecution's evidence[,] it is highly probably that the outcome of [his] case could have been different." (Pet'r's Obj's 13.) These bases, however, are each without merit, for as, discussed above, the Court agrees that "the evidence was legally sufficient to convict Petitioner" and "was also sufficiently corroborative and not inadmissible." (R&R 42.) Petitioner's appellate counsel

was entirely reasonable in deciding not to assert such a farfetched argument on appeal. *See Archer v. Smith*, No. 12-CV-6182, 2013 WL 1122705, at *3 (E.D.N.Y. Mar. 16, 2013) (noting that "counsel need not make an argument that has little or no chance of success" in order to provide effective assistance (internal quotation marks omitted)); *cf. United States v. Trzaska,* 111 F.3d 1019, 1029 (2d Cir. 1997) ("Failure to make an argument unsupported by evidence can hardly be termed ineffective assistance of counsel."). Moreover, because the state court similarly rejected his claim of insufficient evidence, *see Finley*, 894 N.Y.S.2d at 518, Petitioner is unable to show a reasonable probability that, but for trial counsel's failure to object, the result of the proceeding would have been different, *see Waters v. McGuiness,* No. 99-CV-615, 2003 WL 21508318, at *3 (E.D.N.Y. June 16, 2003) ("The Appellate Division reached the merits of the claim on direct appeal and held that the verdict was legally sufficient to establish guilt beyond a reasonable doubt and that it was not against the weight of the evidence. Even if counsel was ineffective for failing to preserve the claim, therefore, [the] petitioner was not prejudiced because the Appellate Division entertained the claim and rejected it on the merits."), *aff'd*, 99 F. App'x 318 (2d Cir. 2004). "[F]or the same reasons that it was not ineffective assistance of trial counsel to fail to raise legal insufficiency as a separate claim, it was not ineffective under the standard set forth in *Strickland* for appellate counsel to fail to raise ineffectiveness of trial counsel in purportedly failing to preserve the legal insufficiency claim." *Fore v. Ercole,* 594 F. Supp. 2d 281, 307 (E.D.N.Y. 2009).

Petitioner further contends that "it was a serious mistake . . . committed by trial counsel by failing to request a missing witness charge" and thus argues that Judge Davison erroneously found "that the 'missing witness charge is not appropriate' in the instant case." (Pet'r's Obj's 14–15 (citation and some internal quotation marks omitted).) To that point, he argues that

29

Belnavis's testimony needed to "be corroborated by the *only* independent evidence: the testimony of the gate officer." (*Id.* at 15.)[20] But upon review of the evidence presented against Petitioner at trial, the Court agrees with Judge Davison's determination that "testimony by the correction guard was not essential to corroborate the accomplices' testimony." (R&R 44.)

To establish a basis for a missing witness charge, the party requesting such a charge must show that the witness has knowledge of a material issue in the case and, if called, would have been expected to give non-cumulative evidence favorable to the party who has not called him or her. *See People v. Gonzalez*, 502 N.E.2d 583, 586 (N.Y. 1986); *see also Arena v. Kaplan*, 952 F. Supp. 2d 468, 489 (E.D.N.Y. 2013) ("A missing witness charge is not appropriate when the witness's testimony would merely corroborate the testimony of other witnesses."). At no time has Petitioner presented evidence that "the missing guard's testimony about Belnavis and Roc[k]" would not "have merely been cumulative." (Pet'r's Obj's 14.) To the contrary, as previously established, "there was sufficient evidence presented to corroborate the testimony of the accomplices under New York law," (R&R 43), such that the correction officer's limited knowledge "would not have added any new information had he testified," *Arena*, 952 F. Supp. 2d at 489; *see also Vinson*, 2011 WL 7640001, at *12 ("It is well-established that an attorney's failure to call additional, cumulative witnesses may constitute a sound tactical decision.").[21]

---

[20] In seeking to substantiate his argument, Petitioner again alleges that Judge Davison "appl[ied] the wrong corroborative evidence standard." (Pet'r's Obj's 14.) Yet, as already discussed, the corroboration requirement "is a state law . . . and may not be raised in a [f]ederal habeas petition." *Dawson*, 111 F. Supp. 2d at 251. The Court, therefore, need not address this non-cognizable matter once again.

[21] Petitioner's bare allegation aside, (*see* Pet'r's Obj's 14), the Court has already noted the abundance of "independent evidence" ranging from the testimony of a non-accomplice to receipts of purchases made at a law enforcement supply store to audio recordings of telephone conversations, (*see* R&R 31 n.25.)

Thus, in all likelihood, the testimony of this "missing" officer would have been merely cumulative of much other testimony at trial. *See Pine v. Superintendent, Green Haven Corr. Facility*, — F. Supp. 3d —, 2015 WL 2125421, at *15 (N.D.N.Y. May 1, 2015) (finding the petitioner would not have been entitled to a missing witness charge where the witness "would not have offered noncumulative testimony favorable to the prosecution"); *Acosta v. Griffin*, No. 11-CV-8724, 2013 WL 5512768, at *9 (S.D.N.Y. Oct. 3, 2013) (denying a claim that counsel was ineffective for not seeking a missing witness charge where the petitioner did not "show that the witness would provide non-cumulative testimony"). Because Petitioner thus cannot demonstrate he would have been entitled to a missing witness charge even if trial counsel had requested one, appellate counsel's decision to forego this claim was neither unreasonable nor prejudicial to his case.

### b. Cumulative Error

Petitioner broadly objects to "[t]he magistrate judge's disregard for the cumulative errors" that caused "prejudice to" him. (Pet'r's Obj's 17.)[22]  Indeed, a reviewing court must "look to the cumulative effect of all of counsel's unprofessional errors." *Gersten v. Senkowski*, 426 F.3d 588, 611 (2d Cir. 2005). Here, however, there are no "errors" for the Court to consider,

---

[22] Though Petitioner contends he was "deprived . . . of a fair trial" due to the "cumulative errors" created by ineffective assistance of "both trial and appellate counsel[,]" he failed to exhaust this claim because he did not assert that "cumulative errors" deprived him of a fair trial in his state court applications. (*See generally* Pet. Ex. B ("Appellant's Brief"); Denial of § 440.10 Motion.)  While failure to exhaust claims generally prohibits a habeas court from evaluating a claim on the merits, an unexhausted claim is deemed exhausted when there is no alternative means to exhaust that claim. *See Aparicio*, 269 F.3d at 90. Thus, even though Petitioner's "cumulative errors" claim is unexhausted and he is in procedural default, AEDPA allows the writ to be "denied on the merits, notwithstanding the failure . . . to exhaust . . . ." 28 U.S.C. § 2254(b)(2). The Court, therefore, will still review the merits of this claim.

as appellate counsel's conduct did not fall outside the "wide range of professionally competent assistance" to have "prejudiced the defense." *Strickland,* 466 U.S. at 687, 690.

As noted above, Petitioner cannot establish that he suffered any prejudice as a result of appellate counsel's failure to raise an ineffective trial counsel claim on appeal. There simply is no "error" to disregard where he has failed to establish that the state court incorrectly applied *Strickland* in rejecting his argument that "[his] Sixth Amendment rights were violated by appellate counsel's deficient performance on direct appeal." (Pet'r's Obj's 9.)

Neither can Petitioner demonstrate prejudice resulting from appellate counsel's presentation of unpreserved issues on direct appeal. On this question the Court again agrees with Judge Davison's determination that "Petitioner cannot meet his burden and show that the result of the proceeding would have been different had appellate counsel omitted any of the claims that were raised on appeal." (R&R 41.) Indeed, courts in the Second Circuit have repeatedly held that appellate counsel is not ineffective for raising an unpreserved issue. *See e.g., Walker v. Ercole*, No. 08-CV-4204, 2011 WL 843966, at *10 (E.D.N.Y. Mar. 8, 2011) ("Appellate counsel cannot be deemed ineffective for raising unpreserved issues."); *Prince v. Ercole*, No. 08-CV-5197, 2009 WL 1172851, at *13 (E.D.N.Y. May 1, 2009) (holding the petitioner's "claim that his appellate counsel was ineffective for raising the unpreserved claims on direct appeal is without merit"). Petitioner provides no basis for his assertion that appellate counsel was ineffective for "argu[ing] issues on direct appeal that were clearly discernible from the record to be unpreserved," (Pet. 9), and the "decision to raise unpreserved claims does not, by itself, lead to a finding of ineffective assistance of counsel," *Moore v. Conway*, No. 08-CV-6390, 2010 WL 4117411, at *10 (W.D.N.Y. Oct. 20, 2010), *aff'd*, 476 F. App'x 928 (2d Cir. 2012). For instance, appellate counsel may "raise an unpreserved issue in the hope of convincing the

32

appellate court to review the unpreserved issue in the exercise of its interest of justice jurisdiction." *Sutherland v. Senkowski*, No. 02-CV-3833, 2003 WL 22953066, at *12 (E.D.N.Y. Oct. 17, 2003). Yet, even if the decision to raise unpreserved issues constituted an unprofessional error, Petitioner has not demonstrated that the result of his appeal would have been different absent the alleged error by appellate counsel. In fact, the R&R expressly notes that "[t]he [state] court did not grant Petitioner any relief from his state court conviction on the basis of those claims" such that "*not* raising them would not have changed the outcome." (R&R 41–42.)[23] Accordingly, Petitioner cannot show that the state court's holding was contrary to federal law, and the Court denies his claim for ineffective assistance of appellate counsel.

### 4. Petitioner's Other Claims[24]

Having overruled each of Petitioner's objections, the Court reviews the remainder of the R&R for clear error. *See Olivares v. Ercole*, 975 F. Supp. 2d 345, 355–56 (S.D.N.Y. 2013). The Court, upon examination of Petitioner's papers and the R&R, finds no substantive error, clear or otherwise, and thus adopts Judge Davison's findings with regard to Petitioner's other claims.[25]

---

[23] While Petitioner contests "the magistrate judge's assertions [that] the state court's denial of [his] error coram nobis motion is irrelevant to the issue . . . [of] appellate counsel's deficient performance on direct appeal," (Pet'r's Obj's 9), the R&R asserts no such thing. To the contrary, Judge Davison expressly notes that "the state's court's decision denying [Petitioner's claim ineffective assistance of appellate counsel] was neither contrary to, nor an unreasonable application of, *Strickland*." (R&R 42.)

[24] Throughout his Objections, Petitioner refers to these other claims only once, highlighting "arguments advanced in assigned appellate counsel's appellant's brief . . . as being wholly inadequate and significantly weaker than arguments that could have been raised." (Pet'r's Obj's 8.) However, he presents no "specific, written objection" to Judge Davison's recommendations. *Adams*, 855 F. Supp. 2d at 206 (internal quotation marks omitted).

[25] In other words, the Court has reviewed all Petitioner's claims and finds no merits to any, even on de novo review.

### III.  Conclusion

The Court hereby adopts Judge Davison's R&R.  Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y.S. Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close the case.  (Dkt. No. 2.)

SO ORDERED.

Dated: December 31 , 2015
     White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE